**Robert SIDELL et al., Appellants,**

v.

**Edward G. HILL, Special Judge Designate of the 17th Judicial District, Appellee.**

Court of Appeals of Kentucky.

May 11, 1962.

Thomas F. Marshall, Funk, Chancellor & Marshall, Frankfort, Morris Weintraub, Newport, for appellant.

Edward G. Hill, pro se.

MOREMEN, Judge.

On the 13th day of September 1961, after an intense investigation of the condition of vice and crime, the Grand Jury of Campbell County returned many indictments. By order dated November 6, 1961, the Chief Justice of this Court appointed Honorable Edward G. Hill, who had presided over the Grand Jury, as special judge to preside over the Campbell Circuit Court during trial of persons charged by the indictments rendered by that Grand Jury.

Four of the persons indicted, Robert Sidell, Madeline C. Sidell, Stanley Shoemaker and Richard Busker, have petitioned this Court to set aside and withdraw its order of November 6, 1961, and to issue a writ prohibiting Judge Hill from trying the petitioners under the indictments against them and, further, to adjudge that the Honorable Louis Reuscher had been duly selected to hear pleadings directed at the validity and sufficiency of said indictments.

This petition for a writ of prohibition has the quality of a petition for rehearing in

an ordinary case in that the problems we are requested to decide have heretofore been determined by us. In order to reconsider the actions taken by this Court a restatement of fact is required.

On September 15, 1961, the Honorable Ray L. Murphy, the regular judge of the Campbell Circuit Court, while exercising a sound sense of propriety, entered an order which reads:

"It being the opinion of Ray L. Murphy, the regular judge of the Criminal Common Law and Equity Division of the Campbell Circuit Court, that it would be improper that he preside as judge to hear and determine motions and demurrers attacking the validity or sufficiency of indictments returned by the recent Grand Jury impaneled on August 15, 1961, and which concluded its session and adjourned on September 13, 1961:

"NOW, THEREFORE, the regular judge removes himself from said hearings on said motions and demurrers, and vacates the Bench for said purpose; and in the event that the attorneys representing the several movants who are named in said indictments, and the attorney representing the Commonwealth of Kentucky, are unable to agree upon the appointment of a local attorney possessing all the necessary qualifications as special judge, this order of vacation shall be properly certified by the Clerk of the Campbell Circuit Court to the Chief Justice of the Court of Appeals for the appointment of a special judge to perform the duties relative to the hearing and determination of the aforesaid motions and demurrers."

On the same day, September 15, 1961, a stipulation designating a special judge was filed under KRS 23.230. This stipulation was signed by the commonwealth's attorney, Hon. William J. Wise, in behalf of the commonwealth, and various attorneys in behalf of the defendants indicted, including the attorneys for petitioners in this case. It reads in part:

"It is stipulated and agreed by and between William J. Wise, Commonwealth's Attorney, and the undersigned attorneys for the respective defendants who have filed motions and demurrers attacking the validity of the above styled indictments, and attorney or attorneys who have indicated to the Commonwealth's Attorney and the Court that they propose to file demurrers and motions attacking the sufficiency and validity of said indictments, that Hon. Louis Reuscher, an attorney of this court, be and he is hereby selected to act as Special Judge herein for the purpose of hearing and determining the above motions and demurrers, and entering all orders relating thereto which he may adjudge to be meet and proper   *   *   *".

On October 26, 1961, an original action was filed in this Court styled Commonwealth of Ky. ex rel. John B. Breckinridge, Attorney General v. Willam J. Wise, Commonwealth's Attorney, Ray L. Murphy, Judge, and Louis Reuscher, Special Judge —all of the 17th Judicial District.

Several officials of the City of Newport who also were under indictment attempted to intervene in this action for the purpose of sustaining the selection of Hon. Louis Reuscher as special judge. On November 1, 1961, this Court entered an order in which it was recited that all motions for intervention were overruled. The case was dismissed as to Commonwealth's Attorney Wise on the ground that he was not a judicial officer, and Reuscher was prohibited and enjoined from sitting as special judge. Regular Judge Murphy was disqualified as a matter of course to hear or try any of the indictments resulting from the Grand Jury above described. The opinion was filed in the case on November 22, 1961 (Ky., 351 S.W.2d 493). It does not assign in detail the reasons for issuing a permanent writ of prohibition—the simple fact remains

that the writ was issued. Judge Milliken filed a concurring opinion which sets forth a firm basis for the action of the Court, saying:

"However, we believe it well to point out that this Court, like the highest court in any common law jurisdiction, has such supervisory powers, derived from the common law of England, as it may find essential for it to assure the effective administration of justice within this jurisdiction. 14 Am. Jur., Courts, Sections 264–274. The common law history of this development in England and the United States was traced by the Supreme Court in 1838 in Kendall v. United States, 12 Pet. 524, 9 L.Ed. at 1181. Section 110 of our Constitution is an express recognition of these supervisory powers and not a limitation of them."

Section 110 of the Constitution referred to in the above opinion, which deals with the jurisdiction and the powers of the Court of Appeals, contains this specific delegation of authority:

"Said court shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdictions."

We will not attempt here to summarize the hundreds of cases, as evidenced by the opinions of this Court, wherein that power has been exercised, but we think it is a fair deduction from the reasoning in all of them that the Court has jealously guarded its right to do those things which are required to obtain fair and just administration of judicial duties in all courts of this commonwealth.

In the case under consideration it is argued that the appointment of Edward G. Hill as Special Judge of the Campbell Circuit Court was irregular and contrary to the statute relating to the appointment of Special Circuit Judges, and it is emphasized that Section 136 of the Constitution states:

"The General Assembly shall provide by law for holding Circuit Courts when, from any cause, the Judge shall fail to attend, or, if in attendance, cannot properly preside."

Under that section the general assembly enacted KRS 23.230 which, in substance, provides that when, from any cause, the circuit judge cannot properly preside the parties may by agreement elect one of the attorneys of the court to perform the regular judge's function and, if the parties cannot agree or if the regular judge determines that sufficient time is not available in which to ascertain if the parties can agree upon a special judge or if the regular judge determines that it is impractical to attempt to obtain an agreement because of the large number of parties to the action, the clerk of the lower court shall certify these facts to the Chief Justice of the Court of Appeals who shall designate a special judge to act.

The petition urged that after the regular circuit judge disqualified himself and the petitioners through their attorneys entered into an agreement with the commonwealth's attorney and selected the Hon. Louis Reuscher as special judge, the Chief Justice had no power or authority under the statute and under Section 136 of the Constitution to appoint Judge Hill to act as special judge.

■ We suppose that the members of an appellate court are not required to be less informed about matters of general public intelligence than is the average person and are granted the right to know when a certain area of their own state has become disturbed and is in a state of turmoil regardless of whether the condition was brought about as the result of some natural phenomena such as fire, windstorms, et cetera, or is self-induced because of malfeasance or misfeasance on the part of some of the officials of the community. The intense publicity through all media of communications concerning conditions in Campbell County was so great that this Court certainly was well within its rights in concluding that these conditions war-

ranted investigation by a grand jury and trial of indictments, if any ensued, under a person who, up to the time of the initiation of the corrective action, was entirely remote from and not in any way subject to the stimuli of preconceived impressions, however slight. This Court, charged as it is by Section 110 of the Constitution with the heavy responsibility of overseeing all inferior courts, is not always restricted to the narrow field of vision seen only by judicial eyes. In addition, this Court, before the time of the appointment of Judge Hill, had been informed through its own records of the tumultuous conditions which were disturbing the people of Campbell County. As early as August 7, 1961, a petition for a writ of prohibition was filed in this Court and some of the members were fully informed about the grave happenings. Although facts are not stated in detail in the opinion, our conclusions may be found in Commonwealth v. Wise, Ky., 351 S.W.2d 491. See also Commonwealth v. Murphy, Judge, Ky., 351 S.W.2d 513.

It is disclosed by the proceedings before us and as a matter of general information that there were few public officials charged with law enforcement in Campbell County who were not under close scrutiny during most of the year 1961. In many cases the suspicions were groundless and the officials were completely absolved from even a suggestion of wrongdoing, but at that time it was certain that all parties, whether guilty or innocent, were under suspicion and the impartial administration of justice in the county was in high question. This Court concluded that all persons could best be served by a judge from a distant area in the state who was completely free to act, unhampered by past impressions concerning the situation or old associations or even familiar memories. These were cases for a stranger to try.

Counsel argue that the appointment of Judge Hill was not in strict accordance with the method set forth by the legislature in KRS 23.230. This Court in

many instances has accepted guidance from that branch of the government in areas in which there was considerable doubt as to whether it had full power to act. This resulted from the fact that we must always bear in mind that judicial encroachment under constitutional doctrine is as repulsive as similar action by the legislative or executive branches. Therefore in the attempt to maintain the delicate balance of power and duties between the three departments of government we have not resisted infringement upon vested power unless that impingement was clear and certainly defined.

Here we are faced with an act of the general assembly under the right granted by Section 136 of the Constitution. The act set out a series of conditions which should exist before the Chief Justice is empowered to designate a special judge. We are also faced with the enormous responsibility placed upon us under Section 110 of the Constitution which reaffirmed and gave to this Court the ancient common law power of a supreme court to control the actions of an inferior court and its officers when conditions warranted it. In 14 Am.Jur., Courts, Section 264, it is written:

"The superintending control over inferior tribunals possessed by courts in various states in this country 'is of ancient inception, and relates back to and has its origin in the power exercised by the King's Bench in England.' The exercise of this supervisory power is 'recognized by the common law,' apart from constitutional and statutory provisions. According to the common law, superior courts are entitled to a general superintendence over all subordinate courts for the purpose of keeping them within their prescribed sphere and of preventing usurpation. This common-law power has been carried into the Constitutions and statutes of many states, which directly give to superior courts a general superintending control over inferior courts of law and equity."

Here again it must be stated that this was not a simple procedure in a single case as is anticipated by KRS 23.230, but involved the general administration of justice in that jurisdiction. The circumstances required action by this Court.

Some situations are so bad that they cannot be cured by half-measures. Serious and distressing faults in our judicial and social system invoke the exercise of full capacities of those who are charged with the duty of discovering and correcting them. This Court could easily have avoided that responsibility by pursuing the well-worn fork of the road as paved by Section 136 of the Constitution and its enabling act, KRS 23.230, and by ignoring the realities of the situation. We chose instead to follow the path marked by Section 110 of the Constitution.

. The petition for a writ of prohibition is denied.