Brian PATTERSON *v.* Steve ISOM

98-969 992 S.W.2d 792

Supreme Court of Arkansas
Opinion delivered June 24, 1999

*Dunham & Faught, P.A.*, by: *James Dunham*, for appellant.

*Dennis C. Sutterfield,* for appellee.

DONALD L. CORBIN, Justice. This appeal presents a conflict involving the concurrent jurisdiction of chancery and juvenile courts to hear paternity cases. The case was certified to us from the Arkansas Court of Appeals as presenting issues requiring further development or clarification of the law; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(5).

Appellant Brian Patterson and Sheila Judkins were married on June 6, 1985. One child, Brandi Patterson, was born of the marriage on May 20, 1987. On August 27, 1991, the couple was granted a divorce by the Pope County Chancery Court (chancery court). Judkins was granted custody of Brandi. Miscellaneous petitions were subsequently filed in the chancery court by both parties, culminating in Patterson's petition for a change of custody filed on April 19, 1996. Judkins responded to the petition by filing a petition for paternity testing, asserting for the first time that Patterson was not Brandi's biological father. In a letter to counsel filed August 6, 1996, the chancery court denied the petition for paternity testing and found that Patterson was the child's father. The final order was not entered until August 13, 1997. In the meantime, Appellee Steve Isom filed a motion to intervene in the chancery action on August 5, 1997, asserting that DNA testing had established him as Brandi's biological father. On that same date, Isom filed a complaint for adjudication of paternity in the Juvenile Division of the Pope County Chancery Court (juvenile court). The juvenile court found Isom to be the biological father of Brandi. It is from that decision that Patterson appeals.

Before we address the points on appeal, we are compelled to respond to Isom's argument that Patterson's jurisdictional arguments are barred by the law-of-the-case doctrine, which "prevents an issue raised in a prior appeal from being raised in a subsequent appeal unless the evidence materially varies between the two appeals." *Richardson v. Rodgers,* 334 Ark. 606, 611, 976 S.W.2d 941, 944 (1998) (quoting *Vandiver v. Banks,* 331 Ark. 386, 391-92, 962 S.W.2d 349, 352 (1998)). This argument stems from the fact that prior to the final determination of this matter in the juvenile court, Patterson petitioned this court for a

writ of prohibition, raising the same jurisdictional arguments that he now raises on appeal. This court denied the writ, but issued no opinion on the matter. Isom asserts that the denial prevents Patterson from raising those issues on appeal. We disagree.

A writ of prohibition is an extraordinary writ that is only appropriate when the lower court is wholly without jurisdiction. *Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998). The purpose of the writ of prohibition is to prevent a court from exercising a power not authorized by law when there is no adequate remedy by appeal or otherwise. *Id.* A writ of prohibition is never issued to prohibit an inferior court from erroneously exercising its jurisdiction. *Id.* Given that Arkansas Code Annotated § 9-10-101(a)(1) (Repl. 1998) provides that chancery and juvenile courts have *concurrent* jurisdiction of paternity cases, a writ of prohibition to prevent either court from acting is not the appropriate remedy, as neither court would be acting "wholly without jurisdiction." *See Hall v. Pulaski County Chancery Court*, 320 Ark. 593, 898 S.W.2d 46 (1995). Furthermore, a writ of prohibition is inappropriate when the trial court has not resolved a factual dispute necessary to the determination of jurisdiction. *Hudson v. Purifoy*, 337 Ark. 146, 986 S.W.2d 870 (1999). Here, when Patterson filed for a writ of prohibition in this court, it was unclear whether the juvenile or chancery court had jurisdiction, as the facts for such a determination had yet to be developed. Accordingly, our earlier denial of the writ of prohibition does not serve as a bar to our consideration of the jurisdictional issues on direct appeal.

Patterson first argues that the juvenile court erred in refusing to dismiss Isom's paternity complaint on the ground that the chancery court has exclusive jurisdiction over the matter, as the issue of paternity arose in the chancery case. He relies on section 9-10-101(a) which provides:

(1) The chancery court shall have concurrent jurisdiction with the juvenile division of chancery court in cases and matters relating to paternity.

(2) *The chancery court shall have exclusive jurisdiction of paternity matters which arise during pendency of original proceedings brought under equity jurisdiction.*

(3) The juvenile division of chancery court shall have exclusive jurisdiction of paternity matters which arise during pendency of original proceedings brought pursuant to the Arkansas Juvenile Code of 1989, § 9-27-301, et seq. [Emphasis added.]

The proper interpretation of section 9-10-101(a)(2) is that "exclusive jurisdiction will lie in a chancery court when a paternity matter arises during the pendency of an action already within its jurisdiction." *Barnes v. Barnes*, 311 Ark. 287, 292, 843 S.W.2d 835, 837 (1992). In short, the issue of paternity must be raised or developed in some way in the chancery action. *Hall*, 320 Ark. 593, 898 S.W.2d 46.

In *Hall*, the facts showed that Doug Freeman and Jamie McFall were divorced in 1988. Some six years later, Doug filed a paternity complaint in juvenile court against Jamie, alleging that a third party, Tod Hall, was the father of the one child born to the marriage. Hall petitioned this court for a writ of prohibition, arguing that the chancery court had exclusive jurisdiction over this matter under section 9-10-101(a)(2). This court denied the writ, holding:

> [B]ased on what we have before us, the paternity issue did not *arise* during the original 1988 divorce action, and that is what § 9-10-101(a)(2) requires for exclusive jurisdiction to reside in chancery court. To be sure, there was some proof in the paternity suit that Doug Freeman suspected Tod Hall was the father of S.F. prior to the divorce, *but, according to the record, that issue was not raised in chancery court by either Doug Freeman or Jamie McFall or developed in that action in any way.* The divorce was concluded in 1988, though the court did retain jurisdiction to modify and enforce the rights of the parties. Under these facts, there are insufficient grounds for finding exclusive jurisdiction in chancery court.

*Id.* at 596, 898 S.W.2d at 48 (emphasis added). The facts in the present case are distinguishable from those in *Hall*.

Here, the parties were granted a divorce by the chancery court in 1990. Between the time they were divorced until April 1996, both parties filed various petitions regarding modification of visitation and support. On April 19, 1996, Patterson filed a peti-

tion for change of custody. In response, Judkins filed a petition asking the chancery court to order paternity testing to determine that Patterson was not the biological father of the child. In an order entered on August 13, 1997, the chancery court denied Judkins's request for tests and specifically found that Patterson was the father of the child.

■ Based upon these facts, we conclude that the chancery court had exclusive jurisdiction under section 9-10-101(a)(2) to determine the issue of paternity. The matter clearly arose during the pendency of an action already within its jurisdiction. Thus, unlike the situation in *Hall*, the issue of paternity had been raised and developed in the chancery court. Indeed, the chancellor ruled upon the matter, finding specifically that Patterson was the child's father. Accordingly, it was error for the juvenile court to deny Patterson's motion to dismiss.

■ ■ It was also error for the juvenile court to deny Patterson's motion to dismiss pursuant to Rule 12(b)(8) of the Arkansas Rules of Civil Procedure, which provides a defense where there is "pendency of another action between the same parties arising out of the same transaction or occurrence." This court has repeatedly held that Rule 12(b)(8) prohibits identical cases from proceeding between identical parties in different courts within this state. *See, e.g., National Bank of Commerce v. Dow Chem. Co.*, 327 Ark. 504, 938 S.W.2d 847 (1997); *Tortorich v. Tortorich*, 324 Ark. 128, 919 S.W.2d 213 (1996)[1]. Under Rule 12(b)(8), the trial court has no choice but to dismiss the complaint where another case is pending in a different court. *Mark Twain Life Ins. Corp. v. Cory*, 283 Ark. 55, 670 S.W.2d 809 (1984). Additionally, our common law mandates that where concurrent jurisdiction is vested in different tribunals, "the first exercising jurisdiction rightfully acquires control to the exclusion of, and without the interference of, the other." *Tortorich*, 324 Ark. at 131, 919 S.W.2d at 214 (quoting *Doss v. Taylor*, 244 Ark. 252, 257, 424 S.W.2d 541, 544-45 (1968)). Thus, when a case is brought in a court of competent jurisdiction, that court's authority and control

---

[1] In its supplemental opinion on denial of rehearing, the *Tortorich* court determined that it was unnecessary to rely on Rule 12(b)(8) in its analysis of that case.

over the case continues until the matter is disposed of in the appellate court. *Id.* "This rule rests upon comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results." *Moore v. Price*, 189 Ark. 117, 121, 70 S.W.2d 563, 565 (1934) (quoting 15 C.J. 1135-36 (footnote omitted)).

In *Tortorich*, 324 Ark. 128, 919 S.W.2d 213, this court pointed out that where two different chancery courts render two different judgments pertaining to alimony, child support, and marital property, calamitous results will occur. This court explained:

> This case illustrates "confusion, conflict, and collision." It is an example of the "calamitous" result envisioned in *Moore v. Price.* Here, the two rulings by the two different chancellors have resulted in one order allowing alimony and one denying it, child support has been set in two different amounts, and one order gives the marital home to [the wife] until the youngest child reaches eighteen while the other orders the home sold and the proceeds divided.

*Id.* at 132, 919 S.W.2d at 214-15.

Here, the prospect for confusion and collision is apparent from the fact that both courts have entered orders providing for the support obligations and visitation rights of Patterson and Isom. The juvenile court ordered Isom to pay child support of $69 per week, and the chancery court ordered Patterson to pay child support of $45 per week. The juvenile court's order reflects that Isom shall have visitation with the child compatible with that granted by the chancery court to Patterson. Although at first glance that provision appears to be in harmony with the order of the chancery court, all parties expressed concern as to how Isom could have the same visitation rights as Patterson without infringing on Judkins's rights as the custodial parent. In other words, with the addition of Isom to the child's visitation, either Patterson or Judkins will be forced to give up some of their visitation rights previously ordered by the chancery court. If we were to allow the juvenile court to undermine the chancery court's already-existing

orders pertaining to support and visitation, we would be opening the flood gates to forum shopping.

 Moreover, the proceedings in chancery court were still pending at the time the complaint was filed in juvenile court. Isom filed his complaint in juvenile court *prior* to the time the chancery court's order was filed. At the same time, Isom filed a motion to intervene in the chancery action to protect his parental rights with Brandi. That motion has never been ruled upon by the chancellor. This court has repeatedly held that an order is not final under ARCP Rule 54(b) unless and until an intervenor's claim has been ruled upon by the trial court. *See, e.g., Kinkead v. Spillers*, 327 Ark. 552, 940 S.W.2d 437 (1997); *Martin v. National Bank of Commerce*, 316 Ark. 83, 870 S.W.2d 738 (1994). The reason behind that principle is that until the intervenor's claim is disposed of, the matter is still pending before the trial court and is thus not appealable. It logically follows that a case is pending if the intervenor's claim has not been ruled upon one way or the other. That is the situation here. Thus, because the issue of Isom's intervention was not ruled upon, the chancery case remains pending.

 In sum, because the issue of paternity was raised and developed in the chancery court prior to the time that Isom filed his complaint in juvenile court, the chancery court had exclusive jurisdiction to resolve the issue under section 9-10-101(a)(2). Additionally, where two courts have concurrent jurisdiction over a particular type of case, the notions of fairness and comity necessitate that the first court to acquire jurisdiction over the matter be allowed to continue exercising its jurisdiction to the exclusion of any other court and without the fear that another court will interfere in the matter. Any other rule would likely produce calamitous results. Here, the chancery court acquired jurisdiction of the paternity issue first, and that matter was still pending at the time Isom filed his complaint in juvenile court. Accordingly, we reverse the juvenile court's order and remand the case with instruction to transfer the case to chancery court.