H.G. FOSTER, Special Prosecutor and Jack McQuary,
Special Prosecutor *v.* Hon. Victor L. HILL, Circuit Judge

07-1235                                              275 S.W.3d 151

Supreme Court of Arkansas
Opinion delivered February 7, 2008

*H. G. Foster, II* and *John (Jack) McQuary*, for petitioners.

*Victor L. Hill*, for respondent.

*Tom Cooper*, for amicus curiae, Arkansas Prosecuting Attorneys Association.

J⁣IM HANNAH, Chief Justice. This matter concerns investigation of possible criminal conduct arising from the death of DeAunta Farrow.[1] Special Prosecuting Attorneys H.G. Foster and Jack McQuary petition this court for a writ of prohibition, or in the alternative, a writ of certiorari, to quash an order of the Circuit Court of Crittenden County, Civil Division (Division 6) calling a special grand jury to investigate Farrow's death. We hold that Division 6 was without authority to enter an order that a special grand jury investigate Farrow's death when Division 3 had already appointed the special prosecutors to perform the same task.[2] Division 3 held exclusive jurisdiction over matters pertaining to the investigation of Farrow's death. The writ of certiorari is granted.[3] Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(3).

Farrow's death occurred in Crittenden County, and pursuant to the PLAN OF THE 2ND JUDICIAL CIRCUIT adopted

---

[1] DeAunta Farrow was shot and killed by West Memphis Police Officer Erik Sammis on the night of June 22, 2007.

[2] Pursuant to Ark. Const. amend. 21, all offenses in this state may be prosecuted by the filing of an information by a prosecuting attorney or by indictment by a grand jury.

[3] Because we determine that the circuit court was not wholly without jurisdiction, a writ of prohibition is not proper. *See Hyden v. Circuit Court of Pulaski County*, 371 Ark. 152, 264 S.W.3d 493 (2007). A writ of certiorari is the proper remedy to quash irregular proceedings. *Jordan v. Circuit Court of Lee County*, 366 Ark 326, 235 S.W.3d 487 (2006).

pursuant to this court's Administrative Order 14, all criminal matters arising in Crittenden County are assigned to Divisions 3, 5, and 8. Following the plan, Second Judicial District prosecuting attorney Brent Davis filed a motion in Division 3 on July 12, 2007, for the appointment of special prosecutors. Mr. Davis had a conflict because he had a "close professional association and working relationship" with the West Memphis Police Department. Foster and McQuary were appointed by Division 3 to investigate any criminal liability arising from the shooting death of Farrow. Pursuant to the order appointing the special prosecutors, their commission was to "expire upon completion of the above-stated investigation[4] and/or prosecution or until further order of this Court." On November 20, 2007, in a report to Division 3, Foster and McQuary stated in part as follows:

> After extensive investigation by the Arkansas State Police, other agencies, Mr. McQuary and myself, it is our opinion that there does not exist sufficient evidence to charge Sgt. Sammis, or any member of the West Memphis Police Department, with a crime under the Arkansas Criminal Code.

Additional language in the report states that, although the shooting of Farrow was a tragedy of the highest order, it "does not present a prosecutable criminal case under the laws of the State of Arkansas." Further, the special prosecutors stated that "should credible 'new' evidence appear at any time, it will be received and evaluated for possible further action. This of course is true here as it is in any criminal investigation, closed or open." Both in oral argument, and in their brief, petitioners indicated that new evidence has been received, that the investigation is not closed, and that they are still acting under the Division 3 order appointing them.

Six days after petitioners' November 20, 2007 report, a petition was presented to Division 6 to call a special grand jury to investigate the death of Farrow. Thereafter, Division 6 issued an order calling a special grand jury to investigate Farrow's death. Two days later on November 28, 2007, Foster and McQuary filed

---

[4] According to the motion to appoint the special prosecutors, the issue to be investigated was the shooting death of DeAunta Farrow.

the present petition for writ of prohibition, or in the alternative, writ of certiorari.[5]

■ The question presented is whether Division 6 had authority to enter its order on November 26, 2007. We first consider the issue of subject-matter jurisdiction. Pursuant to Ark. Const. amend. 80, § 6(A), the circuit courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned. Further, pursuant to Ark. Const. amend. 80, § 6(B), under this court's superintending control, we issued Administrative Order 14 directing that each judicial circuit set up divisions for criminal, civil, juvenile, probate, and domestic-relations matters. However, any sitting circuit judge may sit in any division. *See* Ark. Const. amend. 80, § 6(B). This court's Administrative Order 14 also provides that while each circuit may set up divisions, "[t]he creation of divisions shall in no way limit the powers and duties of the judges to hear all matters within the jurisdiction of the circuit court." Thus, Division 6 had subject-matter jurisdiction on November 26, 2007, when it entered the order calling the special grand jury. Administrative Order 14 provides that subject-matter jurisdiction remains in all circuit courts, and this allows a practice discussed by respondent in oral argument. It permits a judge in a different division in the circuit to act in the absence of the judge handling the case. Administrative Order 14 has thus furthered justice, accommodated the needs of litigants, and addressed the practicalities faced by judicial circuits where there are great distances between courthouses. However, we have before us a wholly different matter. Here, Division 3 was available at the time the parties petitioned Division 6. The parties all agree that no one ever presented the question of a grand jury to Division 3. We must consider whether Division 6 could act when Division 3 in accordance with the 2nd Judicial Circuit Plan, had already exercised jurisdiction on the issue and remained available to all who had an interest in the matter.

There are two grounds wholly unrelated to subject-matter jurisdiction that deprived Division 6 of authority to issue its order on November 26, 2007. The first ground is the common-law rule

---

[5] Activity was still ongoing in Division 3 as indicated by an order entered in Division 3 on December 3, 2007, regarding redaction of the investigative file in preparation for disclosure under the Arkansas Freedom of Information Act.

on concurrent jurisdiction. "Where concurrent jurisdiction is vested in different tribunals, the first exercising jurisdiction rightfully acquires control to the exclusion of, and without interference of, the other." *Patterson v. Isom*, 338 Ark. 234, 239, 992 S.W.3d 792, 796 (1999) (quoting *Tortorich v. Tortorich*, 324 Ark. 128, 131, 919 S.W.2d 213, 214 (1996)).[6] "[W]hen a court of competent jurisdiction acquires jurisdiction of the subject matter of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no coordinate authority is at liberty to interfere with its action." *Askew v. Murdock*, 225 Ark. 68, 71-72, 279 S.W.2d 557, 560 (1955) (quoting 14 Am. Jur. *Courts* § 243 (1938)).

This court has warned that permitting attempts by courts to exercise jurisdiction on an issue upon which another court has already acted would "paralyze justice." *Jones v. Garratt*, 199 Ark. 737, 739, 135 S.W.2d 859, 859 (1940). "If interference may come from one side, it may come from the other also, and what is begun may be reciprocated indefinitely." *Askew*, 225 Ark. at 72, 279 S.W.2d at 560 (quoting 14 Am. Jur. *Courts* § 243 (1938)); *Dunbar v. Bourland*, 88 Ark. 153, 163, 114 S.W. 467, 472 (1908) (quoting *MacLean v. Wayne Circuit Judge*, 52 Mich. 257, 259, 18 N.W. 396, 397 (1884)). Thus, while both divisions had subject-matter jurisdiction, under the common law on concurrent jurisdiction, Division 3 held exclusive jurisdiction on November 26, 2007; as of that date, Division 6 and the other divisions were without authority to call a special grand jury to investigate when Division 3 had already acted by appointing special prosecutors to investigate.

The second ground denying Division 6 the authority to act in this matter on November 26, 2007, is the superintending control of this court exercised over the courts of this state. Arkansas Constitution Amendment 80, § 4 specifically provides that this court exercises superintending control over all the courts of the state. Further, the highest court in any common-law state has inherent superintending control over lower courts; it is an inherent power available to enable the court to fulfill its role as the court of last resort in the state. *State v. Jerrell*, 283 Wis. 2d 145, 699 N.W. 2d 110 (2005). It is derived from the common law of England for purposes of effective administration of justice within

---

[6] This has long been the law. *See Bradley v. State*, 32 Ark. 722, 725 (1878) ("In the case of concurrent jurisdiction in different tribunals, the one first exercising jurisdiction rightfully acquires the control to the exclusion of the other.").

the court's jurisdiction. *Sidell v. Hill*, 357 S.W.2d 318 (Ky. Ct. App. 1962) (citing 14 Am. Jur. *Courts* § 264-74 (1938)).

Superintending jurisdiction is one of three types of jurisdiction held by courts of last resort that also includes appellate and original jurisdiction. *Cohen v. State*, 732 So. 2d 867 (Miss. 1998).[7] Original and superintending control are most often enforced through issuance of writs. *Id.* Superintending control is an extraordinary power that is hampered by no specific rules or means. *Id.* By virtue of the jurisdiction, the court may "invent, frame, and formulate new and additional means, writs and processes." *Id.* (quoting *State v. Roy*, 40 N.M. 397, 422-23, 60 P.2d 646, 662 (1936)). The court is bounded only by the exigencies that call for its exercise. *Cohen, supra.* However, the jurisdiction is used with caution and forbearance to further justice and to secure order and regularity in judicial proceedings where no ordinary remedies are adequate. *Spence v. North Dakota Dist. Ct.*, 292 N.W.2d 53 (N.D. 1980).

In adopting the administrative plan in the Second Judicial Circuit, all eleven circuit court judges signed and agreed to the procedure for the orderly assignment of the circuit court cases filed and distributed to the judges who make up the Second Judicial Circuit. They agreed that criminal matters arising in Crittenden County would be handled by Divisions 3, 5, and 8. That plan was approved by this court as provided for under Administrative Order 14. As noted, Division 3 was never asked to convene a grand jury. Division 6 could not convene a special grand jury in this matter because it was not assigned criminal matters arising in Crittenden County. Under our superintending control, we cannot allow coordinate divisions of a single circuit to compete for control of processes investigating possible criminal acts. Division 3 assumed jurisdiction first and held exclusive jurisdiction. Division 3 was assigned jurisdiction under the administrative plan. Division 3 is where any interested parties should have sought redress for any concerns about the investigation into Farrow's death. If the interested parties present their concerns to Division 3 and then believe that Division 3 fails to follow the proper course, then redress is by petition to this court under its original jurisdiction, not by resort to a coordinate circuit court. The deeply held

---

[7] *See also Olsen v. Koppy*, 593 N.W.2d 762 (N.D. 1999).

concerns expressed by all the parties to this matter are quite understandable given the grave tragedy involved. It is imperative to both justice and to society's perception of justice that this matter be expeditiously, thoroughly, and decisively handled.

Petition for writ of certiorari granted.

CORBIN and BROWN, JJ., concurring.

DONALD L. CORBIN, Justice, concurring. While I agree with the majority that Division 6 of the Crittenden County Circuit Court lacked authority to intervene in the investigation of the shooting death of DeAunta Farrow where the matter was properly assigned to and on-going in Division 3 of that circuit, I must write separately to highlight two issues that greatly trouble me.

First, while Respondent Honorable Victor L. Hill was without authority to consider a matter pending in another division of his circuit, after listening to both parties at oral argument, I understand to a degree why Judge Hill chose to act. The order that was entered by Division 3 appointing the special prosecutors stated that their commissions would "expire upon completion of the above-stated investigation *and/or* prosecution *or* until further order of this Court." (Emphasis added.) The use of the disjunctive "or" coupled with the fact that the special prosecutors submitted a report finding that there was no evidence of criminal wrongdoing on the part of Officer Erik Sammis clearly caused confusion as to whether the matter was settled in Division 3. The current confusion could have been avoided, however, if Judge Hill had conferred with the judge in Division 3 or his administrative judge in order to determine the status of the case. In any event, once Judge Hill learned that the matter was on-going in Division 3, he should have exercised his discretion and terminated his actions. While I agree with Judge Hill that judges, such as himself, who travel throughout the circuit have the jurisdiction to hear all types of matters, we simply cannot have judges competing over the same case; otherwise, chaos would reign.

Second, I want to highlight the concluding part of the majority's opinion that if the parties present concerns to Division 3, but believe that Division 3 is failing to act in an expeditious or proper manner, then a proper party may seek redress by petition to this court. Moreover, I would add that once this matter is closed in Division 3, if a party were to obtain new evidence germane to this case, that party could seek redress in one of the divisions of circuit court assigned to handle criminal matters.

The death of a child is against the natural order of things, and in the case of the shooting of young DeAunta, it is understandable that people want to know that justice is being served. At the same time, the system that dispenses that justice must be allowed to work in an orderly and efficient manner. For the above-stated reasons, I concur.

BROWN, J., joins.

ROBERT L. BROWN, Justice, concurring. I join Justice Corbin's concurrence but add these additional observations. The problem with this case is that a factual dispute looms large as to whether the investigation by the special prosecutors was closed when they issued their report to Judge Burnett on November 20, 2007. The case certainly seemed to be over. The prosecutors said:

> In October alleged "new" evidence was announced to have been in the possession of Mr. J. Bailey, Attorney, to include a "chip" bag and a "soda" container, recovered by Mr. Bailey's team at the scene, and the names of several "new" witnesses who gave various statements to those working with Mr. Bailey. As of the date of this report, despite efforts by the ASP to obtain said evidence, it has not been provided to us. Given the description of the "evidence" provided by Mr. Bailey on television and over the telephone to Foster, it does not appear to adequately contradict the vast weight of the statements given by witnesses who have spoken with law enforcement or the physical evidence recovered by law enforcement at the scene the night of the shooting, or thereafter; *consequently the decision has been made to close the investigation despite the current absence of actual "evidence" alleged to be in Mr. Bailey's possession.* It should be noted here that should credible "new" evidence appear at any time, it will be received and evaluated for possible further action. This of course is true here as it is in any criminal investigation, closed or open. A review of the investigative file will show the photos taken at the scene the night of the shooting and the absence of any chip bags or drink containers.

(Emphasis added.) At the end of the report, the special prosecutors concluded that the shooting did not "present a prosecutable criminal case." Judge Burnett subsequently released the redacted criminal investigative file of the special prosecutors to the public.

The reason this is important is that the appointment of the special prosecutors was to "expire upon completion of the above-stated investigation and/or prosecution or until further orders of

this Court." Hence, it is clear that when the investigation by the special prosecutors is concluded, that is one basis upon which the appointment by the judge ends.

At oral argument before this court, Special Prosecutor H. G. Foster announced that new information had been presented to him since his report, including a DVD relating to the investigation. In light of this, he contended that his investigation was continuing. Mr. Foster further maintained that his role as special prosecutor should go on as long as there is new evidence to consider.

Judge Hill stated at oral argument that he did not believe that the investigation by Mr. Foster and Mr. McQuary was, in fact, continuing. He also disagreed with the special prosecutors' decision not to charge Officer Sammis.

This court, as a result, is called upon to decide a credibility question of whether the investigation by the special prosecutors was concluded in DeAunta's death, which meant the special prosecutors were discharged. In my judgment, we must take the special prosecutors at their word, as we presume public officials perform their duties correctly. *See Dilday v. State*, 300 Ark. 249, 778 S.W.2d 618 (1989). Nor should this court interfere with the duties of the prosecutors, as that would be a violation of the separation-of-powers doctrine. *See State v. Murphy*, 315 Ark. 68, 864 S.W.2d 842 (1993). Because of this, I resolve the credibility issue in favor of the special prosecutors.

Judge Hill's principal argument in opposition to the issuance of the writ is that Arkansas law authorizes the circuit court to empower a special grand jury. He cites to the following statute:

> (a) At any time a grand jury is not in session, the court, in its discretion, by order entered of record, may impanel a special grand jury.

> (b) When impaneled, the special grand jury shall have all the powers and proceed in all respects as provided by law for the conduct of regular grand juries.

Ark. Code Ann. § 16-85-517 (Repl. 2005). The majority opinion does not address this argument for Judge Hill's actions, but clearly this power must yield to that of a circuit judge who has already assumed jurisdiction over a case, which, according to the special prosecutors, is still ongoing. *See Patterson v. Isom*, 338 Ark. 234, 992 S.W.2d 792

(1999). Were this not the case, our judicial system would quickly fall into disorder with individual circuit judges vying for jurisdiction over individual cases. *See id.* That would, clearly, be an untenable situation.

Nevertheless, because of the history of this case, it is imperative that the investigation regarding the new evidence be handled with diligence and dispatch.

What we do not decide in this case is what might transpire in the future in the form of additional investigative action, once the current investigation is concluded.

With these comments, I agree to the issuance of a writ of certiorari to halt the grand jury called for by Judge Hill.

CORBIN, J., joins this concurrence.