365 S.W.3d 879 (2010)
2010 Ark. 279
C.H., Appellant,
v.
STATE of Arkansas, Appellee.
No. CR 10-255.
Supreme Court of Arkansas.
June 3, 2010.
Dorcy Kyle Corbin and Cheryl V. Barnard, Ark. Pub. Defender Comm'n, Little Rock, for appellant.
Dustin McDaniel, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., for appellee.
RONALD L. SHEFFIELD, Justice.
Appellant C.H. has filed an interlocutory appeal of an order entered by the Crawford County Circuit Court, Criminal Division, on January 11, 2010, setting aside that court's December 2, 2009 order transferring C.H.'s case to the juvenile division of the circuit court. On appeal, C.H. contends that the criminal division of the circuit court could not revest itself with jurisdiction once it had transferred the case to the juvenile division. We have jurisdiction pursuant to Ark. R. Sup.Ct. 1-2(b)(1) and (4) (2010), as this case presents an issue of first impression needing clarification and development of the law.
On November 12, 2009, C.H. was charged with one count of rape, a Class Y felony, in violation of Ark.Code Ann. § 5-14-103 (Supp.2009), in the criminal division of the Crawford County Circuit Court. He was accused of unlawfully and feloniously engaging in deviate sexual activity with his five-year-old half-sister, between November 2, 2009, and November 10, 2009. On November 16, 2009, C.H. filed a motion to transfer the case to the juvenile division of the circuit court, pursuant to Ark.Code Ann. § 9-27-318 (Repl.2009). C.H. was born on January 10, 1992, and was seventeen years old at the time of the alleged rape.
The criminal division of the circuit court held a hearing on December 2, 2009, to determine whether to transfer the case, pursuant to Ark.Code Ann. § 9-27-318(e). *880 At the hearing, C.H. argued that the case should be transferred to the juvenile division because he was only seventeen when he allegedly committed the crime; his alleged crime was neither aggressive nor violent, and it did not cause physical injury; he "comes from a broken home"; he had no criminal history; and he had a high chance of being rehabilitated and not offending again, unless he were to serve a sentence in the Arkansas Department of Correction. The State argued against transferring the case because C.H. was only two months shy of his eighteenth birthday when he allegedly committed the rape; the offense was heinous; the fact that C.H. was preparing to enter the military indicated that he had an adult level of sophistication and maturity; the criminal division of the circuit court could retain jurisdiction longer than the juvenile division; and, though he may have been remorseful, C.H. had not yet admitted that he committed the offense.
Several witnesses testified at the hearing. Sean Pittman, a mobile-assessment specialist and clinical social worker at the Piney Ridge Center in Fayetteville, Arkansas, a treatment center for juveniles with emotional and behavioral disorders, testified that he had examined C.H. and he believed C.H. would be a good candidate for Piney Ridge. However, to qualify, C.H. would have to be admitted to Piney Ridge before his eighteenth birthday. Erin Mata, a juvenile intake officer and department supervisor at the Crawford County Juvenile Probation Office, testified about the office's policies on overseeing the probation of extended-juvenile-jurisdiction defendants who have been charged with sexual crimes, and how juveniles who do not cooperate can receive adult sentences from the court. C.H.'s father testified that C.H. did well in school and did not have any disciplinary problems; that C.H. kept to himself as much as possible at home; that he was intelligent; that the family encouraged C.H. to join the military in order to gain some maturity; and that C.H. was obsessed with video games. C.H.'s mother testified that there was a history of mental illness in her family. She also explained that at one point when C.H. was thirteen he grabbed her arm and twisted it behind her back. As a result of this assault, C.H. was evaluated by a counselor through the juvenile court system, though no charges were filed.
At the conclusion of the hearing, the criminal division of the circuit court indicated that it wanted C.H. to undergo a psychological evaluation to verify his IQ and social-functioning capacity, and to determine if he had any psychological diseases. On December 11, 2009, he was evaluated by a psychologist, Donna Van Kirk, Ed.D., who diagnosed him with Asperger Disorder and Disruptive Disorder Not Otherwise Specified. Accordingly, C.H. filed an amended motion to transfer his case to the juvenile division on December 21, 2009. On December 23, 2009, the State filed a response objecting to the motion to transfer. The State argued that Van Kirk's evaluation did not conclusively show that C.H. had Asperger Disorder, and therefore C.H. had not shown that a transfer was warranted under Ark. Code Ann. § 9-27-318(g)(6). Section 9-27-318(g)(6) provides that, in determining whether to transfer a case to the juvenile division, the circuit court may consider the "sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult." Instead, the State argued that, given his age, the nature of the crime he was charged with, his history of antisocial behavior and physical violence, and his high level of intelligence, C.H. should be tried as an adult.
*881 On December 30, 2009, the criminal division entered an order transferring the case to the juvenile division. As a basis for its order, the court made the following findings:
(1) The protection of society requires prosecution as an extended juvenile jurisdiction offender or in the juvenile division of the circuit court;
(2) The alleged offense was violent, but not committed in an aggressive, premeditated or willful manner;
(3) The offense was against a person;
(4) The culpability of the juvenile is offset based on the diagnosis of Asperger's Disorder by Donna Van Kirk Ed.D.;
(5) The juvenile has not previously been adjudicated a juvenile offender;
(6) The juvenile is not mature or sophisticated based on evidence submitted at hearing of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) There are facilities or programs available to the judge of the juvenile division of the circuit court which are likely to rehabilitate the juvenile prior to the expiration of the juvenile division of the circuit court's jurisdiction;
(8) The juvenile acted alone;
(9) There are written reports submitted by Donna Van Kirk Ed.D. relating to the juvenile's mental, physical, educational, and social history. Specifically Donna Van Kirk Ed.D. diagnosed the juvenile with Asperger's Disorder.
On January 4, 2010, the State moved for designation to file the case under the Extended Juvenile Jurisdiction Act, pursuant to Ark.Code Ann. §§ 9-27-501 et seq., and § 9-27-318 (Repl.2009). The juvenile division held a hearing on January 6, 2010. Prior to the hearing, a plea agreement was reached between C.H. and the State. The agreement indicated that in return for pleading guilty, C.H. would (1) be put on probation with the Crawford County Juvenile Department for three years and four days; (2) be designated an Extended Juvenile Jurisdiction Offender; (3) enter and complete treatment at the Piney Ridge Center, beginning January 6, 2010; (4) provide a DNA sample to the Crawford County Sheriff's Department; (5) complete a Community Notification Risk Assessment for purposes of registering as a sex offender; (6) follow the Crawford County Juvenile Department Safety Plan; and (7) have no contact with his half-sister or any other juvenile under the age of fourteen. C.H. and his parents would also waive any rights to a jury trial, and C.H. would be re-evaluated by the juvenile division on his twenty-first birthday. Both C.H. and his mother signed the plea agreement.
At the hearing, the State informed the juvenile division that the victim's parents did not approve of the disposition or the plea contemplated. The victim's mother, C.H.'s stepmother, wanted the State to proceed against C.H. as an adult. The victim's father, who is also C.H.'s father, indicated that he might approve of some other juvenile disposition, but objected to C.H. being admitted to Piney Ridge. The State maintained that it could not accept a plea from C.H. because it could not force the victim's mother to agree to it. The court agreed that the case could not go forward as an extended-juvenile-jurisdiction case without C.H.'s father's waiver of his right to a jury trial. C.H. then argued that his father's refusal to sign the waiver was directly in conflict with his best interest, and he moved to have the court appoint a guardian ad litem to act in loco parentis. In the alternative, C.H. asserted that he should be transferred to Piney Ridge, pending a determination of whether pleading guilty would be in C.H.'s best interest. Finally, C.H. argued that he pled guilty in reliance upon the State's *882 offer as set out in the plea agreement, and requested that a hearing be scheduled to enforce the State's offer. The State countered that the appointment of a guardian ad litem, who could waive C.H.'s right to a jury trial, would not resolve the fact that the victim's mother opposed any sort of adjudication in the juvenile division, and the State would not compel her to acquiesce to a disposition of which she disapproved.
After hearing these arguments, the juvenile division found that it could not proceed because C.H.'s father refused to sign the waiver of C.H.'s right to a jury trial. The juvenile division noted that the case would likely be returned to the criminal division, and that the order from the criminal division transferring the case to the juvenile division specifically stated that the matter would be prosecuted as an extended-juvenile-jurisdiction case. The court observed that it was never the State's original intention to pursue this case as an extended-juvenile-jurisdiction case. Therefore, the juvenile division contemplated that the State would file a motion to set aside the criminal division's transfer order. The juvenile division also stated that C.H. was not entitled to a hearing to enforce the plea offer because the State still had the possibility of revoking its offer. Finally, the juvenile division denied C.H.'s request to be placed at Piney Ridge pending the outcome of any motion to set aside the criminal division's transfer order.
On January 6, 2010, the State moved to set aside the criminal division's order to transfer the case to the juvenile division. The State asserted that the case would not be resolved in the juvenile division before C.H.'s eighteenth birthday, on January 10, 2010, and therefore the case should proceed in the criminal division.
On January 11, 2010, the criminal division of the circuit court entered an order setting aside its December 30, 2009 order transferring the case to the juvenile division. It reasoned that the juvenile division had declined adjudication because the victim's mother had objected to proceeding there. As a result, the case would not be adjudicated before C.H.'s eighteenth birthday. The court also stated in this order that it had entered the transfer order "with the understanding that the case would be pled before the juvenile turned eighteen on January 10, 2010." On January 20, 2010, C.H. filed a timely interlocutory appeal. He also filed a motion for stay of the proceedings on January 28, 2010, which the circuit court granted the same day.
On appeal, C.H. argues that the criminal division of the circuit court erred when it set aside its order transferring the case to the juvenile division and revesting itself with jurisdiction. He maintains that once the criminal division transferred the case, which it did with a valid order pursuant to its statutory authority, it lost jurisdiction for all purposes and could not reobtain it. He points out that the State could have appealed the transfer order, but never did. Therefore, C.H. contends, because the criminal division did not have jurisdiction, its set-aside order was null and void. C.H. further argues that Ark. Code Ann. § 9-27-306 (Repl.2009) grants to the juvenile division exclusive original jurisdiction when a proceeding has been transferred from the criminal division to the juvenile division, and there is no provision for divesting the juvenile division of jurisdiction once it has been conferred upon it. Finally, C.H. maintains that, though no Arkansas case has addressed this issue directly, the opinions in State v. Hatton, 315 Ark. 583, 868 S.W.2d 492 (1994), and Webb v. State, 318 Ark. 581, 886 S.W.2d 624 (1994), indicate support for the proposition that once a court transfers *883 a case, it cannot revest itself with jurisdiction.
In response, the State argues that amendment 80 confers on circuit courts original jurisdiction in all justiciable matters. Therefore, according to the State, the issue in this case is not whether the criminal division had subject-matter jurisdiction, but whether the criminal division violated any statutory authority to set aside its transfer order. The State points out that there is no authority that indicates that a transfer order divests the transferring court of jurisdiction. The State also maintains that the authorities that C.H. cites, Webb v. State and State v. Hatton, predate Amendment 80's unification of subject-matter jurisdiction in the circuit courts. Instead, the State cites Edwards v. Nelson, 372 Ark. 300, 275 S.W.3d 158 (2008), for the proposition that, when a division of the circuit court acquires subject-matter jurisdiction, its authority in the case is subject only to appellate authority. Finally, the State argues that the order setting aside the transfer order was proper because a court possesses inherent authority to set aside any order while it has jurisdiction of a case, pursuant to Arkansas Department of Human Services v. Isbell, 360 Ark. 256, 200 S.W.3d 873 (2005), and it was clear that the juvenile division could no longer retain jurisdiction when it was evident that the case would not be disposed of before C.H.'s eighteenth birthday.
Whether a court has jurisdiction "is always open, cannot be waived, can be questioned for the first time on appeal, and can even be raised by this court." Coones v. State, 280 Ark. 321, 322, 657 S.W.2d 553, 555 (1983). Jurisdiction may also not be conferred by consent of the parties. State v. J.B., 309 Ark. 70, 827 S.W.2d 144 (1992). Section 6 of amendment 80 to the Arkansas Constitution provides for the jurisdiction of the circuit courts:
(A) Circuit Courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution.
(B) Subject to the superintending control of the Supreme Court, the Judges of a Circuit Court may divide that Circuit Court into subject matter divisions, and any Circuit Judge within the Circuit may sit in any division.
Ark. Const. amend. 80, § 6. Pursuant to Ark. Const. amend 80, § 6(B), this court issued Administrative Order Number 14, which states, in relevant part,
1. Divisions.
a. The circuit judges of a judicial circuit shall establish the following subject-matter divisions in each county of the judicial circuit: criminal, civil, juvenile, probate, and domestic relations. The designation of divisions is for the purpose of judicial administration and caseload management and is not for the purpose of subject-matter jurisdiction. The creation of divisions shall in no way limit the powers and duties of the judges to hear all matters within the jurisdiction of the circuit court.
. . . .
3. Administrative Plan.
. . . .
a. Case Assignment and Allocation.
. . . .
(2) Cases in the criminal division, the juvenile division, or the domestic relations division may be exclusively assigned to particular judges, but such assignment shall not preclude them from hearing cases from any subject-matter division of circuit court. Except for the exclusive assignment of criminal, juvenile, and domestic relations division cases, cases in other subject-matter divisions *884 should not be exclusively assigned to particular judges absent extraordinary reasons which must be set out in the circuit's administrative plan.
Ark. Sup.Ct. Admin. Order No. 14. Section 9-27-306(b) of the Arkansas Code indicates that the "assignment of cases to the juvenile division of circuit court shall be as described by the Supreme Court in Administrative Order Number 14, originally issued April 6, 2001." Ark.Code Ann. § 9-27-306(b) (Repl.2009). Also, the circuit court has "exclusive original jurisdiction of and shall be the sole court for ... [p]roceedings for which a juvenile is alleged to be an extended juvenile jurisdiction offender." Ark.Code Ann. § 9-27-306(a)(1)(G).
The juvenile and criminal divisions of the circuit court have concurrent jurisdiction over cases where, as in this case, the juvenile was at least sixteen years old at the time of the crime, and his or her conduct, if committed by an adult, would be a felony; the prosecuting attorney may charge such a juvenile in either division. Ark.Code Ann. § 9-27-318(c)(1) (Repl. 2009); see also Edwards v. Nelson, 372 Ark. 300, 275 S.W.3d 158 (2008). In the juvenile division, proceedings are "commenced by filing a petition with the circuit clerk of the circuit court or by transfer by another court." Ark.Code Ann. § 9-27-310(a) (Repl.2009). Once a charge has been filed in either the criminal division or the juvenile division, the judge of that division or any party may make a motion to transfer the case to another division, pursuant to Ark. Code Ann. § 9-27-318(e), if the juvenile meets the requirements of Ark.Code Ann. § 9-27-318(b). The court must then conduct a transfer hearing to determine whether the case should be transferred, and the court must consider the following factors:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.
Ark.Code Ann. § 9-27-318(g). The court must set forth its findings in writing, and transfer the case only if there is "clear and convincing evidence" that it should be *885 transferred. Ark.Code Ann. § 9-27-318(h). If the juvenile is between the ages of fourteen and seventeen and charged with capital murder, murder in the first degree, kidnapping, aggravated robbery, rape, battery in the first degree, or terroristic act, the criminal division may enter an order to transfer the case to the juvenile division as an extended-juvenile-jurisdiction case. Ark.Code Ann. § 9-27-318(i); see also Ark.Code Ann. § 9-27-503 (Repl.2009).
Our case law provides further guidance as to how jurisdiction over cases is allotted among the divisions of the circuit court. In Edwards v. Nelson, 372 Ark. 300, 275 S.W.3d 158 (2008), which the State cited in its brief, the appellees objected to the appointment of Edwards as the administrator of the decedent's estate because he was a convicted felon. Before this court could reach the merits of the appeal, we had to address the issue of whether the circuit court's order invalidating the appointment was an impermissible collateral attack on the probate court's order appointing Edwards. This court noted that the two courts had concurrent jurisdiction pursuant to amendment 80. In such instances, "when a court of competent jurisdiction acquires jurisdiction of the subject matter of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and ... no court of coordinate authority is at liberty to interfere with its action." Edwards, 372 Ark. at 303, 275 S.W.3d at 161 (quoting Askew v. Murdock Acceptance Corp., 225 Ark. 68, 71-72, 279 S.W.2d 557, 560 (1955)). Accordingly, this court held in Edwards that the probate court that appointed Edwards was the first to acquire jurisdiction, and therefore retained jurisdiction "to the exclusion of any other court." Edwards, 372 Ark. at 304, 275 S.W.3d at 162 (quoting Patterson v. Isom, 338 Ark. 234, 241, 992 S.W.2d 792, 796 (1999)). The circuit court, lacking original jurisdiction to decide the validity of the appointment, usurped the probate court's authority.
The rule in the case of concurrent jurisdiction was more fully explained by this court in Foster v. Hill, 372 Ark. 263, 275 S.W.3d 151 (2008). In that case, Division 3 of the Second Judicial District, pursuant to this court's Administrative Order No. 14, appointed special prosecutors to investigate the death of DeAunta Farrow, which occurred in Crittenden County. After an investigation, the special prosecutors reported that there did not seem to be sufficient evidence to charge anyone with a crime, but that they would reevaluate the case if any new evidence came to light. A few days after the report, Division 6 issued an order calling a special grand jury to investigate Farrow's death. The special prosecutors then filed a writ of certiorari to prevent Division 6 from proceeding. This court began its analysis by stating that the issue in the case was whether Division 6 had authority to enter its order calling for the grand jury. The court noted that amendment 80 established the circuit courts as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned, and, though Administrative Order No. 14 authorized the judicial circuit to set up divisions, the creation of the divisions would not limit the power of a circuit judge to hear all matters within the jurisdiction of the circuit court. Therefore, Division 6 had subject-matter jurisdiction when it entered its order. However, by the common law rule of concurrent jurisdiction, Division 3 held exclusive jurisdiction over the matter since it had acted first in appointing the special prosecutors, so Division 6 was without authority to enter its order. Also, this court noted that it had set up a plan of assigning cases within the circuit court pursuant to *886 its inherent superintending control over the lower courts. This plan had assigned all criminal matters arising in Crittenden County to Division 3, not Division 6. Therefore, this court granted the writ of certiorari.
In the case before us, the criminal division was the first to obtain jurisdiction of the case, and therefore it had exclusive jurisdiction. See Foster, supra; Edwards, supra. However, it then transferred the case to the juvenile division. This court in Edwards indicated that the purpose of the above-stated rule in the case of concurrent jurisdiction is to "prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process." Edwards, 372 Ark. at 303, 275 S.W.3d at 161 (quoting Askew, 225 Ark. at 72, 279 S.W.2d at 560). Also, "[t]his rule rests on comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results." Edwards, 372 Ark. at 303-04, 275 S.W.3d at 161 (quoting Askew, 225 Ark. at 72-73, 279 S.W.2d at 560-61). Therefore, while the criminal division obtained jurisdiction in this case originally, when it transferred the case to the juvenile division, it relinquished its exclusive jurisdiction to the juvenile division. To find otherwise would allow both the criminal division and the juvenile division to exercise exclusive jurisdiction, occasioning the "calamitous results" that the concurrent-jurisdiction rule seeks to avoid.
What is more, the criminal division lacked authority to enter an order setting aside its transfer order. No provision in the Juvenile Code grants authority to a division to set aside its order transferring a juvenile-defendant case to another division. Indeed, the only provision of the Arkansas Code that authorizes a circuit court to set aside its order is Arkansas Rule of Civil Procedure 60, which does not apply in criminal cases, including juvenile-defendant cases. Ark.Code Ann. § 9-27-505(d) (Repl.2009); Ark.Code Ann. § 9-27-325(f) (Repl.2009); see also Thomas v. State, 345 Ark. 236, 45 S.W.3d 818 (2001).
Finally, the State failed to pursue the proper remedy in this case. In Thomas v. State, 345 Ark. 236, 45 S.W.3d 818 (2001), after the circuit court transferred a juvenile-defendant case to the juvenile court, the State filed a motion for reconsideration. Stating that it had entered the transfer order based on inaccurate information, the circuit court entered an order rescinding its prior transfer order and retaining jurisdiction over the juvenile. On appeal, this court held that the circuit court lacked jurisdiction to enter the set-aside order, and therefore we dismissed the appeal because we never acquired appellate jurisdiction. In addition, this court found that the State failed to pursue the proper remedy by filing a direct and timely appeal of the transfer order.
Likewise, in the instant case, the criminal division lost its exclusive jurisdiction over C.H.'s case when it transferred the case to the juvenile division. Therefore, the criminal division lacked authority to enter the January 11, 2010 order setting aside its December 30, 2009 order transferring C.H.'s case to the juvenile division, and so the set-aside order is a nullity. Accordingly, we never acquired appellate jurisdiction. We dismiss the appeal.
Appeal dismissed.
BROWN, J., concurs.
CORBIN, J., not participating.
BROWN, J., concurring.
I join the majority opinion but write separately to urge the General Assembly *887 to consider an amendment to our Juvenile Code to address the conundrum we face in this appeal.
In the instant case, the circuit court, criminal division, transferred C.H.'s case to circuit court, juvenile division, for C.H. to enter a plea in accordance with a plea agreement. The State opposed the transfer because C.H. was seventeen. When C.H.'s father refused to sign a jury waiver, the plea could not be entered, and the plea agreement was no longer viable.
The juvenile division orally noted that the prosecutor would now move to set aside the transfer order from the criminal division, which the prosecutor, in fact, did. The criminal division then entered an order setting aside its original transfer order. The majority opinion correctly holds that the criminal division had no authority to do this under our case law regarding concurrent jurisdiction. Accordingly, we dismiss the case for lack of jurisdiction over this particular case, the reason being that the criminal division gave up its exclusive jurisdiction over the matter by its transfer to the juvenile division.
Yet, all of this leaves the prosecution of this case unsettled and in something of a quandary. There is no statutory authority under the Juvenile Code and, specifically under Arkansas Code Annotated section 9-27-318, for a juvenile division to transfer the matter back to the criminal division, even though the reason for the original transfer to juvenile court no longer exists. Indeed, it appears that since the plea agreement has fallen apart, no one desires that the matter remain in the juvenile division except for the public defender on behalf of C.H.
I certainly do not espouse a system of justice that would have juveniles transferred back and forth between criminal division and juvenile division like ping pong balls. See Smith v. State, 399 Md. 565, 924 A.2d 1175 (2007) (Wilner, J., concurring). But when the entire reason for the transfer no longer exists, or where a transfer is made based on a misrepresentation of fact, it seems that there should be some statutory vehicle for the juvenile division to transfer the matter back to the criminal division.
In the matter before us, without such authority in the juvenile division, the case languishes there where neither the prosecutor nor the two judges want it. Clearly, under these facts justice is not done.
This is not our typical concurrent-jurisdiction case where one division of circuit court conflicts with another division over deciding the matter like we have had in at least two cases since the adoption of amendment 80 to the Arkansas Constitution. See, e.g., Foster v. Hill, 372 Ark. 263, 275 S.W.3d 151 (2008); Edwards v. Nelson, 372 Ark. 300, 275 S.W.3d 158 (2008). Here, on the contrary, both judges ostensibly believe the case should go back to criminal division.
The majority concludes that the State should have appealed the transfer from criminal division to juvenile division within thirty days of the transfer order. That seems an awkward solution, though. See also Thomas v. State, 345 Ark. 236, 45 S.W.3d 818 (2001) (The onus was also placed on the State to appeal.). By the time the State learned that C.H.'s father would not allow the plea agreement to transpire, the State only had twenty-three days from the order of transfer to appeal. In other cases, that time could be even more truncated. If the State had agreed to the original transfer to juvenile division, which it admittedly did not do in the case at hand, it would be put in the awkward position of challenging a transfer by appeal under the ten factors which it had so recently supported.
*888 The more reasoned solution is a legislative act providing the juvenile division with transfer authority under exceptional circumstances such as where erroneous information led to the original transfer from the criminal division or when the purpose of the transfer has been thwarted.