2014 Ark. App. 160

**In the Matter of the ESTATE OF Douglas KEMP, Deceased**

**U.S. Trust, Bank of America, N.A., Appellant**

v.

**First National Bank & Trust, Mountain Home, as Special Administrator of the Estate of Douglas Kemp, and Certain Heirs at Law of Douglas Kemp, Appellees.**

No. CV–13–493.

Court of Appeals of Arkansas.

March 12, 2014.

Womack, Phelps & McNeill, P.A., Jonesboro, by: Tom D. Womack and Ryan Wilson, for appellant.

John C. Throesch, Pocahontas and Terry T. Wiens, for appellee.

BILL H. WALMSLEY, Judge.

In this case, an express inter vivos trust failed when the settlor died without any readily ascertainable heirs. Bank of America (BA or the trustee) appeals from the judgment of the Randolph County Circuit Court, sitting as the probate court over the estate of the deceased settlor, that ordered the trustee to turn the trust assets over to the administrator of the estate. The court also ordered the trustee to reimburse the estate for expenses it

charged the trust after it learned that the estate was opened and to pay attorney's fees to the trust beneficiaries that had been located. This appeal challenges those rulings. We affirm in part and reverse in part.

## I. *Background*

On December 28, 1961, Douglas Kemp created a revocable inter vivos trust for the stated purpose of relieving himself of management responsibility for his estate and placing that responsibility in the control of a professional fiduciary. Through a series of mergers, BA ultimately became the successor trustee. According to the original trust instrument, the assets were to be distributed according to Kemp's last will and testament upon his death. The trust also provided that, if Kemp died without a will, the trust assets were to be distributed to Kemp's heirs at law.

In November 1972, Kemp amended the trust to make the trusts of each of his parents beneficiaries.[1] Although his parents predeceased him, Kemp never amended the trust provisions.[2] Kemp died intestate in March 2008 with no readily ascertainable heirs.[3]

Upon Kemp's death, First National Bank & Trust of Mountain Home (FNB) was appointed special administrator of Kemp's estate. FNB then contacted BA about having BA turn over the trust assets to FNB or to see if BA wanted to become the administrator of the estate.

In November 2008, BA filed a petition to terminate the trust in Craighead County Circuit Court and also sought permission to distribute the trust assets to the heirs it had determined and located. The decedent did not live in Craighead County or own any property there.

Although FNB indicated that it would intervene in the Craighead County action, more than a year later, it filed a motion in the Randolph County Probate Court asking that court to order BA to turn over the trust assets to the estate. FNB also sought an accounting by BA. Kemp's heirs at law later joined in FNB's motion and also sought an accounting. In its response to the motions, BA asserted that the trust assets were not assets of the estate, that no probate proceedings were necessary to determine Kemp's heirs at law or to distribute the trust assets directly to the heirs, and denied that the probate court had jurisdiction to order BA to account for its administration of the trust.

By order entered June 1, 2010, the probate court found that upon Kemp's death, the trust failed because there were no longer any named beneficiaries and a resulting trust came into existence, with the heirs at law becoming the beneficiaries of the trust assets. The court ordered BA to immediately pay the assets of the trust over to the estate. BA was also ordered to file "a full and complete accounting of its management of the [t]rust" for the preceding five years.

BA gave FNB an activity summary for the trust. It also paid over to the administrator the assets of the trust in the amount of $813,030.39. On July 13, 2010, FNB filed an objection, stating that this was not a proper accounting of the trust assets. FNB also reserved the right to file a claim against BA for mismanagement of the

---

**1.** The parents' trusts were established on July 1, 1969.

**2.** Kemp's father died in 1979; his mother died in 1998.

**3.** Ultimately, approximately twenty heirs were located. Eight of these heirs retained counsel and participated in the proceedings below. These eight are the heirs referred to throughout this opinion.

trust assets. In doing so, FNB noted that this claim might fall within the purview of the action pending in Craighead County.

A hearing was held on FNB's objection on March 7, 2011, and the court made a ruling from the bench that a full and complete probate accounting was required.[4] The court further found that the assets in the trust were assets of the decedent's estate. The court also found that fees paid out of the trust after BA became aware that the estate had been opened should not have been charged and that BA should reimburse the estate for these fees in the amount of $48,931.73. The court said that BA's actions came very close to shocking the conscience of the court and that it would entertain a motion for attorney's fees within two weeks of the date of the hearing.

On April 6, 2011, BA filed a formal accounting with the probate court.

On July 18, 2011, BA filed a motion for amendment to findings of fact and reconsideration. The motion noted that the order from the March 7, 2011 hearing had not been entered by the probate court. After a September 6, 2011 hearing on the motion for reconsideration, the probate court took the matter under advisement.

The bench ruling from the March 7, 2011 hearing was reduced to a written order and entered on March 4, 2013.

On March 18, 2013, prior to the entry of an order actually awarding the fees, BA filed an objection to the award of fees. According to the objection, the attorney for the heirs did not file a motion for fees as provided by Ark. R. Civ. P. 54(e), but instead filed the motion directly with the court. BA also asserted that it was not notified that the hearing would be for the purpose of determining attorney's fees and did not receive the motion until after the hearing. At the hearing, the attorney for the heirs was awarded a fee of $8,929.48.

BA filed its notice of appeal from the March 4, 2013 order on March 25, 2013. In the notice, BA specifically listed the June 1, 2010 order as one of the intermediate orders that it wanted reviewed.

The probate court denied the motion for reconsideration by order entered April 12, 2013. The court also reaffirmed its prior rulings. The same day, the court entered its order granting FNB attorney's fees of $3,031.25 and the heirs a fee of $8,929.48.[5] On April 19, 2013, BA filed an amended notice of appeal to include both April 12 orders.

## II. *Standard of Review*

■■■ We review probate matters de novo but will not reverse the probate court's findings of fact unless they are clearly erroneous. *Ashley v. Ashley*, 2012 Ark. App. 236, 405 S.W.3d 419. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* We must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *Id.*

## III. *Arguments on Appeal*

For reversal, BA argues that the probate court lacked jurisdiction to require it to transfer non-estate assets to FNB and to file a probate accounting; that the probate court erred in finding its accounting

---

4. Apparently, the probate court was concerned that the accounting was not verified, as is required for probate accountings. *See* Ark.Code Ann. § 28–52–104 (Repl.2012).

5. The fees to FNB's attorney were to be paid by the estate, while the fees to the heirs were to be paid by BA. BA does not challenge the fees awarded to FNB.

was deficient and that it should repay the estate for expenses properly charged against the trust; and the court erred in requiring it to pay attorney's fees to the heirs.

## IV. *Discussion*

■ BA first argues that the probate court lacked jurisdiction over the trust assets and that those assets did not become part of Kemp's intestate estate upon his death.[6] We disagree. The probate court is a court of special and limited jurisdiction, even though it is a court of superior and general jurisdiction within those limits. *Hilburn v. First State Bank*, 259 Ark. 569, 535 S.W.2d 810 (1976). It has only such jurisdiction and powers as are expressly conferred by statute or the constitution, or necessarily incident thereto. *Id.* The authority and jurisdiction of probate courts are to be strictly construed. *Kidwell v. Rhew*, 371 Ark. 490, 268 S.W.3d 309 (2007). The constitution vested in the probate courts exclusive original jurisdiction "in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, and persons of unsound mind and their estates, as is now vested in courts of probate, or may be hereafter prescribed by law." Ark. Const. art. 7, § 34, as amended by amend. 24, § 1; *Hilburn*, 259 Ark. at 572, 535 S.W.2d at 812. Thus, the probate court, in the exercise of its jurisdiction to administer the estates of decedents, is authorized to determine what property belongs to the estate. *Carlson v. Carlson*, 224 Ark. 284, 273 S.W.2d 542 (1954); *White v. Toney*, 37 Ark.App. 36, 823 S.W.2d 921 (1992).

■ This brings us to the question of whether the trust assets became assets of Kemp's estate upon his death. Our supreme court has addressed a somewhat similar issue and held that a resulting trust arose in favor of the settlor where an express trust failed because it violated the rule against perpetuities. *O'Neal v. Warmack*, 250 Ark. 685, 466 S.W.2d 913 (1971). A "resulting trust" arose because the inference was that the trustee was not to keep the property; and because no other disposition was made of it, the trustee was required to return the property to the creator of the trust, or to his successors if he was dead. *See* W. Fratcher, *Scott on Trusts* section 404.1 (4th ed.1988). Likewise, other courts have held that where an express trust fails for lack of a dispositive provision, a resulting trust arises in favor of the settlor or the settlor's estate. *Hansen v. Bear Film Co.*, 28 Cal.2d 154, 168 P.2d 946 (1946); *Estate of McReynolds*, 800 S.W.2d 798 (Mo.Ct.App.1990); *Schenerlein v. Schenerlein*, 197 N.E.2d 231 (Ohio Ct.App.1963); *Gamble v. Malone*, 182 P.3d 171 (Okla.Civ.App.2008); *Rainey v. Rainey*, 795 S.W.2d 139 (Tenn.Ct.App.1990). *See also generally* George E. Palmer, *The Effect of Indefiniteness on the Validity of Trusts and Powers of Appointment*, 10 UCLA L.Rev. 241, 280–81 (1963); B.P. de R. O'Byrne, Annotation, *Disposition of Property of Inter Vivos Trust Falling in After Death of Settlor, Who Left Will Making No Express Disposition of the Trust Property*, 30 A.L.R.3d 1318 (1970); Restatement (Third) of Trusts §§ 7 cmt. e, 8 (2003). Therefore, the probate court correctly determined that the trust res became an asset of the estate upon Kemp's death.

■ For its second point, BA argues that the probate court erred in ordering it to reimburse the estate for expenses BA incurred in the administration of the trust. Contrary to BA's argument, the probate

---

6. Although this issue may be moot in light of BA's concession at oral argument that it was not seeking to undo the distribution, we nevertheless address the merits.

court did not order BA to reimburse the estate because its accounting was deficient. Instead, the court considered the expenses that BA incurred, such as trustee's fees for itself, its attorney's fees, and the fees for the heir-locator service it hired to be improper expenses.[7]

Generally speaking, a trustee may incur expenses that are necessary to carry out the purposes of the trust. *See* Restatement (Second) of Trusts § 188. For example, it is appropriate for a trustee to incur expenses for costs in maintaining or defending a judicial proceeding for the benefit of the trust estate, such as litigation to resist claims that may result in a loss to the trust estate. *See id.; see also* 3 Scott on Trusts § 188.4 at 62 (4th ed.1988). When a trustee properly incurs expenses, he is entitled to reimbursement out of the trust estate for such expenses. *See* Restatement (Second) of Trusts § 244. Where an expense is not properly incurred, however, the trustee is not entitled to reimbursement from the trust estate. *See id.* § 245. A trustee is not entitled to reimbursement for expenses that do not confer a benefit upon the trust estate, such as those expenses related to litigation resulting from the fault of the trustee. *See* 3 Scott on Trusts § 188.6 at 70.

 With these principles in mind, we turn to BA's argument. We hold that the court in Randolph County could not properly review the trust's expenses because those issues were already pending in Craighead County when FNB first sought to have the court in Randolph County exercise control over the trust. The common-law rule on concurrent jurisdiction provides that "[w]here concurrent jurisdiction is vested in different tribunals, the first exercising jurisdiction rightfully acquires control to the exclusion of, and without interference of, the other." *Foster v. Hill,* 372 Ark. 263, 267, 275 S.W.3d 151, 154 (2008) (quoting *Patterson v. Isom,* 338 Ark. 234, 239, 992 S.W.2d 792, 796 (1999)). "[W]hen a court of competent jurisdiction acquires jurisdiction of the subject matter of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no coordinate authority is at liberty to interfere with its action." *Foster,* 372 Ark. at 267, 275 S.W.3d at 154 (quoting *Askew v. Murdock,* 225 Ark. 68, 71–72, 279 S.W.2d 557, 560 (1955)). BA filed its petition in Craighead County, which involved issues surrounding the trust, on November 21, 2008, while FNB did not ask the court in Randolph County to exercise its authority over the trust until more than a year later, on December 3, 2009. Under the common law on concurrent jurisdiction, as of that date, Craighead County had acquired exclusive authority to administer the trust, including determining what were and were not appropriate trust expenses.

 This brings us to BA's final issue concerning the probate court's award of attorney's fees to the heirs. With inapplicable exceptions, a probate court may not award attorney's fees unless authorized by statute. *In re Estate of Reimer,* 2010 Ark. App. 41, 2010 WL 132348. It is also well settled that probate courts do not have jurisdiction to award attorney's fees to individual beneficiaries. *Swaffar v. Swaffar,* 327 Ark. 235, 938 S.W.2d 552 (1997).

The heirs argue that an award of fees is proper as a sanction because BA failed to submit a proper accounting as ordered by the probate court. The heirs cite Arkan-

---

7. Actually, there were three heir-locator services because the administrator, BA, and the heirs each hired their own search firm. We are only concerned with the fees to the firm hired by BA.

sas Code Annotated section 28–52–103(c) and this court's decision in *Hartsfield v. Lescher*, 104 Ark.App. 1, 289 S.W.3d 123 (2008), as authority for the award. The probate court's order awarding fees to the heirs in the present case was based on their objections to BA's original accounting.[8] The court also made it clear that the fees were for the purpose of the accounting issue only. Therefore, the only logical conclusion is that the court based its award of fees on section 28–52–103(c). However, section 28–52–103(c) is inapplicable in the present case because section 28–52–103 speaks in terms of the *personal representative's* duty to file accountings and possible sanctions for failing to do so. BA was not acting as the personal representative when it filed its first accounting that the court deemed improper. *Hartsfield* is likewise inapplicable because it involved a personal representative who failed to account. Because section 28–52–103(c) does not apply to this case, there is no authority for the probate court's award of attorney's fees to the heirs.

### V. *Conclusion*

In conclusion, we affirm that the probate court had jurisdiction to determine that the trust's res became an asset of the estate upon the settlor's death; however, the court did not have jurisdiction to determine the propriety of the expenses BA paid out of the trusts or to award attorney's fees to the heirs. Therefore, we reverse the probate court on those issues.

Affirmed in part; reversed in part.

GRUBER and GLOVER, JJ., agree.

---

**8.** BA notes in its brief that the heirs did not file an objection to the accounting. Nor does the record contain the heirs' motion for attorney's fees.