

Cite as 2016 Ark. App. 155

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-15-547

|  |  |
|---|---|
| | **Opinion Delivered** March 9, 2016 |
| CYNTHIA ANN CHANDLER, ADMINISTRATRIX OF THE ESTATE OF JAMES EDWARD HARRIS, DECEASED<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION [NO. 60PR-12-1379] |
| V. | HONORABLE COLLINS KILGORE, JUDGE |
| SHARRON HARRIS<br>APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**BART F. VIRDEN, Judge**

Cynthia Chandler, the administratrix of the estate of her father, James Harris, appeals the order of the Pulaski County Circuit Court that found that all estate property should go to Harris's surviving spouse, appellee Sharron Harris. Chandler argues that the circuit court erred in its application of Ark. Code Ann. § 28-39-101(b) (Repl. 2012) concerning spousal allowances and in its decision concerning ownership of certain corporate property. We affirm in part and reverse and remand in part.

The decedent, James Harris, died intestate on June 24, 2012, survived by Chandler, his only child, and Harris. Harris and the decedent had been married since 1979.

On July 25, 2012, Chandler petitioned for appointment as administratrix of her father's estate. She was appointed by an order entered on July 26, 2012. She accepted the appointment and letters of administration were issued that same day.

Chandler filed an inventory of the estate on February 17, 2014, with an approximate total value of $544,000. This included $514,774 of stock in Jim Harris Realty, Inc. (JHR, Inc.), and approximately $30,000 of other property, consisting mostly of guns, hunting and fishing equipment, and a boat and trailer.[1]

Harris objected to the inventory, claiming that it included property she and the decedent had acquired during their marriage, such as the stock in JHR, Inc. She also asserted that all property listed in the inventory, including the JHR, Inc. stock, was her property. Chandler filed a response to Harris's objection, arguing that the concept of marital property did not apply and that there was a difference between what was marital property in the context of divorce and what was property of the estate.

A hearing on the objection was held on June 23, 2014. On September 18, 2014, the circuit court issued its letter opinion. The court found that two First Security Bank accounts (approximately $183,256) were not corporate accounts because they were payable on the decedent's death and passed to Harris outside of probate. A five-acre tract of real property in Dallas County was found to have been titled solely in the decedent's name and, as such,

---

[1]Attached to the inventory was a list of corporate assets taken from the 2011 corporate tax return.

passed to the estate subject to Harris's dower interest. The court found that the parties had agreed that the items listed in Exhibit 10 went to Chandler.[2] The court further found that, unless Harris could show that it was titled jointly with the decedent, all other property listed as corporate assets would go to JHR, Inc. Based on Subchapter S tax documents, the court found that 150 shares of JHR, Inc., belonged to Harris as her separate property and that the remaining 150 shares were to be equally divided between Harris and Chandler. The court found the estate was not entitled to reimbursement from funds in a Capitol Bank account allegedly used to pay Harris's personal expenses because they were utilized for legitimate business purposes. All other property was to be equally divided between Chandler and Harris.

Prior to entry of the court's order, Chandler filed a motion for reconsideration, arguing that, pursuant to Ark. Code Ann. § 28-11-305 (Repl. 2012), the stock in JHR, Inc., should be divided 100 shares to Chandler and fifty shares to Harris. Harris responded and counter-petitioned that specific items of personal property titled in both the decedent's and her name be found to be her individual property, which included the boat and trailer, and that furnishings and appliances in the marital home be considered her property. She attached title documents and invoices showing that the boats, trailers, four-wheelers, and one vehicle were titled in the names of the decedent and Harris. One vehicle appeared to be jointly titled in the corporation, the decedent, and Harris.

After a hearing on the motions for reconsideration, a final order of distribution was entered. The court found that the decedent and Harris had utilized JHR, Inc., for their

---

[2]These were items that had sentimental value to Chandler.

personal expenses. The court left unchanged the disposition of the bank accounts and the Dallas County real property; however, the court changed the distribution of some of the property from its original letter opinion. The court divided the shares in JHR, Inc., belonging to the decedent 100 shares to Chandler and fifty shares to Harris. The court found that, as the surviving spouse, Harris was entitled to such furniture, furnishings, appliances, implements, and equipment as shall be reasonably necessary for her use and occupancy of the marital dwelling. The court specifically found that all of the personal property listed in the February 14, 2014 inventory, excluding the items in Exhibit 10, shall be vested in Harris as such items of personal property were reasonably necessary for her use.[3] The court specifically found, based on the testimony of CPA Tracy Fox and Harris, that the items contained on Exhibit A to the inventory were assets owned individually by the decedent and Harris and were in the nature of furniture, furnishings, appliances, implements, and equipment reasonably necessary for her use and were therefore assigned to and vested in Harris.[4] The court also found that a boat, motor, and trailer; two four-wheelers; a cargo trailer; a 2008 Chevy Silverado; and a 2011 Chevy Tahoe were all titled in Harris's name and passed to her outside of probate. This appeal followed.

---

[3]This finding specifically included a 1997 Welbilt boat, a 1997 Angler boat trailer, a 2004 Support Atlas 5 x 10 utility trailer, a 2005 T/A utility trailer, a 2011 Supp Big Tex utility trailer, all shotguns and weapons reflected on the inventory, ammunition, gun cases, fishing and hunting equipment, and unspecified furniture, furnishings, and appliances.

[4]These items included the equipment, fixtures, and furniture; a pressure washer; a phone system; a utility trailer; machinery; office equipment; a cargo trailer; a Kubota tractor and implements; a trailer for the tractor; a disc for the tractor; computers; a fireproof safe; and a refrigerator.

We review probate matters de novo but will not reverse the probate court's findings of fact unless they are clearly erroneous. *In re Estate of Kemp*, 2014 Ark. App. 160, 433 S.W.3d 911. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* We must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *Id.*

In her first point, Chandler argues that the probate court erred in its application of Ark. Code Ann. § 28-39-101 and the timeliness of Harris's request for a spousal allowance. Section 28-39-101 is concerned with statutory allowances, which are simply other payments to a surviving spouse and minor children.[5] There are actually three allowances provided by the statute: (1) personal property or proceeds of the sale of personal property worth $4,000, but if creditors' claims prohibit this, then $2,000 as against creditors (Ark. Code Ann. § 28-39-101(a)); (2) such furniture, furnishings, appliances, implements, and equipment necessary for occupancy of the home will be vested in the surviving spouse, provided that he or she was living with the decedent at the time of the decedent's death (Ark. Code Ann. § 28-39-101(b)); and (3) an allowance during the two months after the decedent's death, of property for sustenance, "in accordance with the usual living standards of the family," but not to exceed $1,000 (Ark. Code Ann. § 28-39-101(c)). These provisions are cumulative, and sections (b) and (c) apply as against both creditors and distributees. Ark. Code Ann. § 28-39-101(d). These allowances are also in addition to any rights of homestead or dower/curtesy. *Spears v. Spears*, 213 Ark. 15, 209 S.W.2d 105 (1948). In this case we are

---

[5]Here, there are no minor children.

concerned with the furniture and furnishings allowance under Ark. Code Ann. § 28-39-101(b).

We first address the timeliness issue. According to Chandler, Harris first requested a spousal allowance in her response to Chandler's posttrial motion for reconsideration. Harris responded that she first asserted that the furniture, furnishings, appliances, implements, and equipment were hers pursuant to sections 28-39-101 and 28-11-305 in a motion filed shortly after the decedent's death. Harris's attorney also made an oral request for the allowance at the hearing on the motion for reconsideration. The circuit court did not specifically rule on the timeliness issue.

Section 28-39-101 does not specify a time within which the surviving spouse can request for an allowance of the personal property. Instead, section 28-39-101(a)(1) provides that the election for an allowance can be made prior to the sale of the personal property or from the proceeds of such sale. In construing predecessors to this statute, our supreme court has held that such requests were timely as long as there were funds or personal property from which to pay the allowances still in the hands of the personal representative. *Wofford v. James*, 204 Ark. 700, 163 S.W.2d 710 (1942) (applying rule to monetary allowances); *see also Quick v. Davidson*, 261 Ark. 38, 545 S.W.2d 917 (1977) (applying rule to allocation of dower/curtesy). Chandler cites *Wright v. Langdon*, 274 Ark. 258, 623 S.W.2d 823 (1981), in support of her argument. *Wright* is inapplicable to this case because it is not a probate case dealing with a surviving spouse's request for her statutory allowances. It is undisputed that no final distribution had been made and that possession of the personal property was still

vested in Chandler as the personal representative.[6] Therefore, Harris's request for her statutory allowances was timely.

Chandler next argues that the circuit court erred in awarding Harris her allowance under section 28-39-101 because there was no showing that such property was necessary for Harris's use and occupancy of her home. Chandler also argues that the court erred in awarding Harris, as part of her allowance, property that was titled in the corporate name. Although we have concluded that Harris's request for spousal allowances was timely, we need not address whether the circuit court was correct in its application of section 28-39-101 because the court erred in awarding property that was titled solely in the corporate name to Harris as part of her statutory allowances.

The circuit court found that the boats, four-wheelers, trailers, and pickup trucks were titled in Harris's name and passed to her outside of probate. However, at least some of the documentary evidence shows that some items were titled *solely* in the corporate name, making the court's finding clearly erroneous. Section 28-39-101 is applicable to the *personal estate* of the decedent. Our supreme court has held that a widow's allowance under that section cannot be awarded out of the estate of a partnership in which her deceased husband had been a partner because partnership assets are not the separate property of the decedent partner. *See McLerkin v. Schilling*, 192 Ark. 1083, 96 S.W.2d 445 (1936). This is akin to the familiar rule that a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. *Thomsen Family Trust v. Peterson*

---

[6]*See* Ark. Code Ann. § 28-49-101; *Dean v. Brown*, 216 Ark. 761, 227 S.W.2d 623 (1950); *Jensen v. Housley*, 207 Ark. 742, 182 S.W.2d 758 (1944).

*Family Enters., Inc.*, 66 Ark. App. 294, 989 S.W.2d 934 (1999). A stockholder does not acquire any estate in the property of a corporation by virtue of his stock ownership; the full legal and equitable title thereto is in the corporation. *Id.*

The circuit court clearly erred in awarding Harris her statutory allowance out of corporate property. Accordingly, we reverse on this point and remand for further proceedings consistent with this opinion.

Under her second point, Chandler argues that the circuit court erred in its ruling that Harris owned one-half of the corporate stock in her own right. Chandler's argument is that there is no record of one-half (150 shares) of the corporate stock being transferred from the decedent to Harris. Harris testified that she owned 150 shares in JHR, Inc., as a tenant by the entirety. The record contains documentation that the decedent and Harris made an election to have JHR, Inc., treated as a Subchapter S corporation, with the decedent and Harris each owning 150 shares of stock since June 1985. There are also documents from the state and federal tax authorities acknowledging receipt of the election documents.

The fact that there was no transfer of the shares on the corporate books is not dispositive. The statutes relating to the transfer of shares are designed to protect the *corporation* in the payment of dividends and are not concerned with the rights of the parties transferring the stock. *See Ashley v. Ashley*, 393 A.2d 637 (Pa. 1978). The Subchapter S election is also some evidence of a gift of 150 shares to Harris. The election was a representation made to a third party, the federal and state tax authorities, that a gift of the shares had been made to Harris and is presumably true. Physical delivery of the stock

certificates is not an essential element of an inter vivos gift of stock. *Bettis v. Bettis*, 96 Ark. App. 101, 239 S.W.3d 5 (2006).

Chandler contends that the decision on the stock ownership comes down to whether the corporate documents control or whether the Subchapter S election controls. However, it was not just the documents because Harris testified that she owned corporate stock. The documents from the tax authorities serve to corroborate Harris's testimony that the election was made. Moreover, the circuit court relied on both the testimony and documentary evidence in finding that Harris owned 150 shares in her own right. Our standard of review decides this issue: "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Rymor Builders, Inc. v. Tanglewood Plumbing Co., Inc.*, 100 Ark. App. 141, 147, 265 S.W .3d 151, 155 (2007).

Finally, Chandler argues that the circuit court erred in awarding Harris certain corporate property as her separate property. Even though we have reversed the court's award of Harris's statutory allowances out of corporate property, there is one other point we need to address. Although Chandler contends that the First Security Bank accounts were corporate property because they used the corporate ID number, she concedes in her brief that the accounts were titled jointly in the names of the decedent and Harris. Therefore, the court correctly ruled that those accounts passed to Harris outside of probate as payable-on-death accounts.

Affirmed in part; reversed and remanded in part.

GLADWIN, C.J., and GRUBER, J., agree.

*William G. Almand, P.A.*, by: *William G. Almand*, for appellant.
*Bequette & Billingsley, P.A.*, by: *Keith I. Billingsley*, for appellee.

9