Cite as 2023 Ark. App. 380

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-20-656

| | |
|---|---|
| WHIT BARTON, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF LOIS BARNES PERKINS, DECEASED; TROY BROWN; CHERRYALE BURGE; AND DWAIN RILEY | Opinion Delivered September 13, 2023 |
| | APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CV-19-42] |
| APPELLANTS/CROSS-APPELLEES | HONORABLE SAM POPE, JUDGE |
| V. | |
| THEOPHILIS C. KING, INDIVIDUALLY AND IN HIS CAPACITY AS THE TRUSTEE OF THE LOIS BARNES PERKINS REVOCABLE TRUST | |
| | AFFIRMED ON DIRECT APPEAL AND |
| APPELLEE/CROSS-APPELLANT | ON CROSS-APPEAL |

## N. MARK KLAPPENBACH, Judge

This appeal concerns the circuit court's refusal to set aside a trust (direct appeal) and the removal of the trustee (cross-appeal). We review probate matters de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous. *In re Est. of Kemp*, 2014 Ark. App. 160, 433 S.W.3d 911. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* We must also defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses.

*Id.* Having reviewed this appeal under the proper standards, we conclude that the circuit court's order is not clearly erroneous. We affirm on direct appeal and on cross-appeal.

Lois Barnes Perkins, a 104-year-old resident of Wilmot, Arkansas, died on June 26, 2018. Lois's husband died in 2001 when Lois was in her late eighties. The years between 2001 and Lois's death in 2018 are important to an assessment of this litigation.

Lois had no children of her own, but she had two younger sisters and extended relatives who lived far away in other states. Lois and her husband had lived a frugal life and accumulated assets that included farmland, a home, and several bank accounts. One cousin, Gloria Rayborn, said Lois had talked in years past about her desire to leave her assets in a will to her sisters and their heirs. One of Lois's sisters, Clematis, held Lois's medical power of attorney and was a joint owner of a Citizen's Bank account.

After Lois's death, Lois's relatives learned that Lois had executed a trust in April 2018, two months before she died. The trust template was found online by one of Lois's longtime friends, Theophilis C. King, who drafted the trust for Lois. Lois executed the trust, and it was notarized. No will was ever found. The trust had a list of eight beneficiaries who would receive approximately $81,000 each from the trust. Those eight persons were six out-of-state relatives, Mr. King, and Mr. King's minor granddaughter.

King lives in Jackson, Mississippi and claimed to be Lois's second cousin once removed. King found Lois during genealogy research, and he came to meet Lois and her husband in Wilmot in 2001, shortly before Lois's husband died. Subsequently, King

2

developed a more personal and helpful relationship with Lois, particularly because other relatives lived so far away from Lois.

Although Lois went to visit Gloria Rayborn in Georgia for three weeks in 2016, Lois never agreed to move in with her. Lois remained in her home but received help. In the latter months of 2017 and the early months of 2018, Lois went in and out of the emergency room and the hospital. She was described as quiet and hard of hearing, had difficulty in her mobility and used a walker, and was at times agitated and confused about her medication, her cell phone, and paying her bills on time.

In February 2018, the extended family encouraged Lois to appoint King as her financial power of attorney because he lived the closest to her. King accomplished this with an online power-of-attorney form notarized by one of Lois's friends, Pearlie Ramey. The next day, King took Lois to Simmons Bank to change some pay-on-death designations, to add new beneficiaries, and to change the percentage of ownership of each beneficiary.

In late February or early March 2018, Gloria Rayborn came to visit Lois for a month. Rayborn was concerned about Lois's ability to continue to live alone, and her home-health-care services were about to expire under Medicare. She called Adult Protective Services (APS) three times to express concern about self-neglect and endangerment, although those reports were later determined to be unsubstantiated. King was informed of these concerns, and when he shared them with Lois, Lois and King were upset and offended. King thought Rayborn was trying to put Lois in a mental institution that would impinge on Lois's legacy. Lois did not want to go into an institution of any sort.

King viewed Lois's will to be problematic, mainly because a trust would streamline the distribution Lois wanted without the hassle and cost of probate. King found a trust template and crafted it to suit Lois's wishes. When Lois signed the trust documents, she also had bank accounts and certificates of deposit put in the name of her trust. Lois also had deeds prepared to convey title to any real property she had into the trust, even a deed to cemetery property she did not own. In the final version of the April trust, there was a provision that would prevent any beneficiary from attempting to remove King as the appointed trustee. Lois died two months later, in June 2018.

Following the funeral on July 3, 2018, King and one of Lois's nieces went to Lois's house to conduct an inventory. Purportedly, there was a sizable amount of cash that Lois kept in her home in a bag, but when the bag was found, it was empty. Ultimately, the circuit court found that there was insufficient evidence to support a claim that the alleged money existed.

King did not inform Lois's other relatives about the trust at any time before her funeral or during the inventory at Lois's house. Instead, family members began to inquire about Lois's will, and eight days later, King texted in a family group text that Lois had set up a trust and that he was the trustee. King described each beneficiary's home state but did not include specific names. Despite requests, King did not provide the beneficiaries a copy of the trust or an accounting.

The Estate filed suit against King on April 3, 2019, to have the trust set aside and to have King removed as trustee. Even after the suit was filed, King refused to provide the

4

beneficiaries with a copy of the trust and an accounting. It was at the hearing on the Estate's petition for a temporary restraining order that King first turned over the trust instrument for their review. At the trial held over two days in November 2019, the court heard from twelve witnesses. The thrust of the Estate's case was that King exerted control and undue influence over Lois, procuring the trust in violation of his fiduciary relationship to her and doing so when Lois was not competent to execute such a document. In response, King asserted that he had helped and cared for Lois for many years, he merely helped her get her affairs in order in line with her wishes, and he had not violated any fiduciary duty and certainly not to the degree that warranted his removal as trustee. The circuit court had before it hundreds of pages of medical documents, noting that there were moments of confusion but that, in large measure, Lois had been deemed appropriately oriented and without serious mental issues.

The circuit court was convinced beyond a reasonable doubt that Lois had testamentary capacity to execute the trust on April 13, 2018, at the time knowing her assets and what she wanted to do with them and that she was not acting under King's undue influence. The circuit court's assessment was that Lois believed King to be "the son she never had," and

> [h]e acted like one, too; checking on her often, taking her places, sometimes over long distances, to see her relatives at special events, and including her with his family in their events. He also showed up for her medical needs as well and provided transportation and watch care to those. His position as her power of attorney was suggested by her sister and two nieces because they realized he had shown a willingness to help and was closer physically than any other relative, residing about four hours away from [Lois's] home in Wilmot, Arkansas.

5

The circuit court further found that King had breached his fiduciary duties as a trustee in a "serious" way by failing to provide the beneficiaries with a copy of the trust documents until after the complaint was filed in 2019 and failing to provide a timely accounting. These "serious" breaches supported King's removal as trustee. Both sides appealed.

We first consider the direct appeal filed by appellants, collectively "the Estate." The Estate contends that the trust should be set aside and voided because King procured it and inappropriately used his influence over an elderly incapable woman to have her execute it. We disagree that the Estate has demonstrated reversible error.

When a trust is drafted by a beneficiary who is in a confidential relationship with the person creating a trust, a rebuttable presumption arises on that beneficiary to prove beyond a reasonable doubt that the person creating the trust had both the mental capacity and the freedom of will and actions to render the trust legally valid and, further, that the trust was not created from the undue influence of that beneficiary. *See generally Simpson v. Simpson*, 2014 Ark. App. 80, at 25, 432 S.W.3d 66, 81.

King held Lois's financial power of attorney and thus undoubtedly stood in a confidential relationship with her. King procured the trust document for Lois. King and his granddaughter became part of the class of beneficiaries under the trust. The burden shifted to King to prove beyond a reasonable doubt that Lois had both the mental capacity and the freedom of will and actions required to render the trust legally valid. This was a matter for the circuit court to resolve.

6

While opinions differed on the true nature of the relationship between Lois and King, the circuit court was impressed by the many years that King acted like a son for Lois and did many things for her to help her in her elder years. The circuit court was impressed by the bank employees, old friends, and even one of the beneficiaries who confirmed that Lois was in charge of herself and that they were not suspicious of King. Indeed, one niece confirmed that "[n]o one bossed my aunt around." The circuit court made clear that Lois was not fearful but was instead fiercely independent and that the other family members were supportive of King taking over her financial affairs, at least while she was alive. Having reviewed the record before us de novo, and giving due regard to the credibility assessments made by the circuit court, we cannot say that the circuit court clearly erred in deciding that King successfully rebutted the accusation of undue influence.

Moreover, the circuit court was convinced that Lois possessed the capacity to execute the April 2018 trust. This decision rested on the circuit court's analysis of the testimony before it. Old age and feeble health are circumstances bearing on the question of mental capacity. *Bennett v. Ballow*, 2022 Ark. App. 311, 653 S.W.3d 357. Nevertheless, the mere fact that an aged person's memory is failing, that his judgment is vacillating, that he is becoming eccentric, or that his mind is not as active as it once was do not invalidate an instrument if it was fairly made and he was free from undue influence. *Id.* Ultimately, each case presenting a question of a party's mental capacity is to be decided on its own particular facts and circumstances. *Id.*

In this case, protective services intervened in early 2018 to determine whether Lois was able to live alone safely, and that ability was confirmed. Bank employees confirmed that Lois was able to, and did, make her own decisions; she was described as a "very smart, very intelligent lady" and "very strong willed." King took Lois to see her attorney, David Harrod, but ultimately did not act on Harrod's advice, who noted that Lois mistakenly believed that she owned real property related to a cemetery plot. King believed that creating the trust was not difficult and was a much more streamlined and inexpensive way for Lois to distribute her assets.

The requisite level of mental capacity to create a trust is defined as having sufficient mental capacity to retain in his memory, without promptings, the extent and condition of his property and to comprehend how he is disposing of it, and to whom. *See Harbur v. O'Neal*, 2014 Ark. App. 119, 432 S.W.3d 651. The circuit court acknowledged that there was some proof that Lois suffered from some health issues in her later two years that affected her mental acuity, but there was no medical evidence to support that in April 2018, Lois lacked mental capacity to make her own decisions. When the issue is mental capacity, it is the time of execution that is key. By all accounts, Lois was educated, intelligent, held multiple degrees, and was very proud of her intellect. Bank employees confirmed that Lois knew what she owned and what she was doing. The notary verified Lois's signature with no qualms. The cousin who was so concerned about Lois's ability to live alone had her concerns discounted by a state investigation. Harrod reiterated his belief that generally speaking Lois knew what she was doing.

8

The circuit court heard from twelve witnesses, including bank employees, a notary, and longtime friends of Lois, and concluded that despite her age, health issues, and occasional confusion, Lois was "fiercely independent" and had the capacity to execute the April 2018 trust. The circuit court also found that, even though King was in a position of a fiduciary to Lois and thus had the burden of proving beyond a reasonable doubt that Lois's entry into the trust was not the product of his undue influence over her, King succeeded in proving that to the satisfaction of the circuit court.

Having upheld the April 2018 trust, we move to the cross-appeal filed by King, who asserts that the circuit court committed clear error in removing him as the trustee. We disagree that King has shown clear error. A trustee is required to keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests, including "promptly" furnishing a copy of the trust instrument upon request. Ark. Code Ann. § 28-73-814(a) & (b) (Repl. 2012). A beneficiary may request the court to remove a trustee if the trustee has committed a "serious" breach of trust. Ark. Code Ann. § 28-73-706(a) & (b) (Repl. 2012).

In this case, King did not provide any of the trust beneficiaries any information about Lois's trust until mid-July 2018. It was not until then that some but not all the beneficiaries learned via text of the trust's creation, its assets being bank accounts and real properties, and King's intent to complete an appraisal, for which he would be reimbursed. It was not until after the beneficiaries filed their complaint against King in the fall of 2019 that the trust documents were finally revealed.

For whatever reason, King resisted revealing the trust documents, and King did not perform an accounting until required to do so by the circuit court. This was deemed a "serious" breach of the fiduciary duties placed on a trustee, particularly the failure to "promptly" furnish a copy of the trust on request. The circuit court found that beneficiaries are entitled to assess their rights or reach informed decisions but cannot do so without the trustee abiding by his statutory duty to promptly provide relevant trust documents to those beneficiaries on request. The circuit court found that King, in fact, "ignored" his statutory duties in that regard. We hold that the circuit court did not clearly err in finding that this was a serious breach that warranted King's removal as trustee.

Having reviewed this appeal under the proper appellate standards, we are not left with a definite and firm conviction that the circuit court made a mistake, so we affirm both the direct appeal and the cross-appeal.

Affirmed on direct appeal and on cross-appeal.

VIRDEN and WOOD, JJ., agree.

*Appellate Solutions, PLLC*, d/b/a Riordan Law Firm, by: *Deborah Truby Riordan*, for appellants/cross-appellees.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellee/cross-appellant.