Cite as 2024 Ark. App. 581

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-23-335

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF IMA JEAN LINDSEY, DECEASED | Opinion Delivered November 20, 2024 |
| RALPH MYERS III, EXECUTOR OF THE ESTATE OF IMA JEAN LINDSEY, DECEASED | APPEAL FROM THE WOODRUFF COUNTY CIRCUIT COURT [NO. 74PR-21-35] |
| APPELLANT | HONORABLE CHALK S. MITCHELL, JUDGE |
| V. | |
| JOHNNY LINDSEY AND MERCHANTS & PLANTERS BANK | |
| APPELLEES | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Ralph Myers III, the executor of the estate of Ima Jean Lindsey, appeals the Woodruff County Circuit Court's order dismissing his claims against Johnny Lindsey and Merchants & Planters Bank (the Bank). On appeal, Myers contends that the circuit court erred in finding that (1) Ima Jean's checking and savings accounts and certificates of deposit (CDs) are not property of the estate; (2) Myers has no standing to contest Johnny's actions as power of attorney (POA) for Ima Jean; and (3) as POA, Johnny did not breach his fiduciary duty, commit conversion, or unjustly enrich himself. Myers also claims that the circuit court erred in approving the amended "Family Settlement Agreement" (FSA) and that the court erred in denying his injunction and his claim for money damages against the Bank. We affirm.

Ima Jean died at the age of ninety on August 14, 2021. Myers had drafted her will, which Ima Jean executed on October 30, 2013. In the will, Ima Jean designated Myers as the executor of her estate, directed that he serve as estate attorney, and requested that he "be paid a full attorney fee, pursuant to the Probate Code, plus expenses." At the time Ima Jean executed the will, she was a widow with four children: Vicki Lindsey, Ann Lindsey, William Lindsey,[1] and Johnny. Ima Jean bequeathed certain real estate to William, Johnny, and Lance and her residence to Vicki. She also directed that certain real estate be sold and the proceeds used to pay taxes and expenses with the remaining proceeds to go to William and Johnny. Finally, she bequeathed the "rest, residue and remainder" of the estate to Vicki and Ann equally. The will did not specifically refer to or address any bank accounts or CDs.

On September 19, 2019, several years before she died, Ima Jean executed a durable POA designating Johnny to serve as her attorney-in-fact. The POA authorized Johnny to take any action he deemed appropriate, providing in relevant part as follows:

> I hereby grant unto my attorney in fact full power and authority to perform any act whatsoever requisite, necessary or appropriate to be done as determined by my attorney's sole and unrestricted judgment and discretion with respect to any and all of my property as fully as I might or could do personally present with full power of substitution and revocation. I hereby ratify and confirm all that my attorney in fact may have heretofore done in my name and behalf and all that my attorney may hereafter do pursuant to the power of attorney hereby granted.

On December 19, 2019, Ima Jean had a checking account and a savings account at the Bank to which Johnny added his name:

---

[1]William died on June 29, 2019, leaving two children, Lance Lindsey and Megan Peretta.

- The checking account was opened by Ima Jean on August 17, 2018; was payable on death (POD) to Ann; and was modified by Johnny on December 19, 2019, adding his name as co-owner with Ima Jean but leaving the POD as Ann.

- The savings account was opened by Ima Jean on July 16, 2018; was POD to Ann, Vicki, William, and Johnny; and was modified by Johnny on December 19, 2019, adding his name as co-owner with Ima Jean and changing the POD to Ann and Vicki.

Ima Jean also owned several CDS:

- CD 1 was opened by Ima Jean on or about July 13, 2018, with an initial deposit of $100,000; was POD to Ann, Vicki, Johnny, and William; and had a balance of approximately $106,109 at the time of the hearing. On January 6, 2020, Johnny's name was added as co-owner, William and Johnny were removed as beneficiaries on death, and Vicki and Ann were named POD beneficiaries.

- CD 2 was opened by Ima Jean on or about July 16, 2018, with an initial deposit of $469,870; was POD to Ann, Vicki, Johnny, and William; and had a balance of $469,870 at the time of the hearing. On January 6, 2020, Johnny's name was added as co-owner with Ima Jean, William and Johnny were removed as beneficiaries on death, and Vicki and Ann were named POD beneficiaries.

- CD 3 was opened by Ima Jean on or about August 26, 2019, with an initial deposit of $44,000 and was POD to Ann, Vicki, and Johnny. On January 6, 2020, Johnny's name was added as co-owner with Ima Jean. Johnny was removed as a beneficiary on

3

death, and Vicki and Ann were named POD beneficiaries. Johnny redeemed the CD in full on August 23, 2021, nine days after Ima Jean's death.

- CD 4 was opened on or about December 19, 2019, by Johnny as POA; listed Ima Jean and Johnny as co-owners of the account; had an initial deposit of $131,591.50; was POD to Ann and Vicki; and had a balance of $108,157.47 at the time of the hearing.

On August 26, 2021, Myers filed a petition for probate of will and appointment of personal representative, and on October 7, the circuit court admitted the will into probate and appointed Myers as executor of Ima Jean's estate. When Myers learned about Johnny's actions as POA regarding Ima Jean's accounts at the Bank, he filed a petition for declaratory judgment and injunctive relief on November 2 against Johnny and the Bank. He alleged three claims against Johnny in connection with his modifications to Ima Jean's accounts: breach of fiduciary duty, conversion, and unjust enrichment. Myers also asked the court to restrain the Bank from allowing removal of funds or changes to the accounts until further orders of the court. Finally, Myers asked the court to declare that the money held in all of Ima Jean's accounts was property of Ima Jean's estate and to distribute it according to the provisions of her will. On November 3, the court entered a temporary restraining order forbidding Johnny from withdrawing any funds from the accounts until further orders of the court.

The Bank filed an answer stating that it had placed a hold on Ima Jean's accounts "awaiting further orders of the court" and denying all remaining allegations in the petition.

4

Johnny answered, asserting that the actions he took were pursuant to the POA, that he acted under Ima Jean's authority and direction, and that none of the accounts were the property of Ima Jean's estate.

On April 11, 2022, Johnny filed a petition to approve the FSA, asserting that he, Ann, and Vicki disagreed with Myers's petition and had reached an agreement about Ima Jean's accounts at the Bank. The FSA was attached to Johnny's petition.

In response to the petition to approve the FSA, Myers asserted that the FSA was unenforceable because not all interested parties—namely, William's two children—had participated. He also asserted the agreement should not be approved due to the existence of fraud: specifically, it was intended to cover up Johnny's conversion of estate funds for his sole use. Myers twice amended his complaint: first, requesting the court to order Johnny to produce an accounting of all money in his possession or control that should be part of the estate and, second, asserting a claim for money damages against the Bank for permitting Johnny to make alterations to Ima Jean's accounts.

In its response to the amended complaint, the Bank alleged that Ima Jean's accounts contained POD provisions before Johnny had made any modifications and, thus, the estate would not have been entitled to the accounts because they would have been paid to Ima Jean's children pursuant to those designations. The Bank also contended that neither Myers nor the estate is a real party in interest to enforce any of the disputed accounts; therefore, Myers had no standing to pursue his claims.

Johnny, Ann, Vicki, and Lance (William's son) executed an amended FSA. The amended FSA addressed only the above-mentioned accounts. In it, the parties (1) acknowledge that Myers had filed a petition seeking to have the accounts deemed part of the estate, (2) disagree with Myers's petition, (3) state that he filed the petition without their prior knowledge or consent, and (4) dispute that the accounts are part of Ima Jean's estate. They stated their desire to settle the issues raised in Myers's petition and asked the court to treat Ima Jean's accounts as if William's name had not been removed from the POD designations. They agreed that the accounts will remain under Johnny's ownership, that he will use the funds to help Vicki and Ann with their expenses, that he will not use the funds for his personal benefit without notifying Vicki or Ann, and that William's portions will be distributed to his children, Lance and Megan, in equal shares at Johnny's death. According to the agreement, the arrangement benefited Vicki and Ann because they would not lose their current or future eligibility for governmental assistance benefits.

The circuit court held a hearing on November 28, 2022, at which Johnny and his sisters and William's children all testified. Johnny testified that he was designated Ima Jean's attorney-in-fact under the POA because she was being "frauded by people" "taking her money right and left." He said that Vicki told him a handyman had charged Ima Jean $147,000 over a year period for carpentry work that appeared excessive and that she paid a phone caller from the "FBI" $4,500 in a scam. Johnny testified that Ima Jean asked him to protect and preserve her money and to take care of his aunt and his sisters, which is what he did. He said that he put his name on Ima Jean's accounts to make sure that Ima Jean would have the

6

money if she lived to be one hundred years old. He said Ima Jean told him to pay himself for handling her bills and affairs, but he told her no. She told him to use the credit card for himself for whatever he wanted to use it for. He admitted that he had used it but not a lot. He said that he did not know anything about the modified POD designations on the CDs. His only goal was to fix the accounts so that "nobody could get to her unless they went through me."

Vicki testified that Ima Jean was getting "taken in by scammers" and had not been paying her bills before Johnny stepped in. She testified that she agreed with the amended FSA and wanted Johnny to maintain ownership of the accounts to take care of her. Ann also testified that they did not wish to assert a claim against Johnny for his actions in modifying the accounts and that she agreed with the terms of the amended FSA.

On December 15, the circuit court entered a twelve-page letter opinion with findings of fact and conclusions of law. On January 3, 2023, the court entered an order specifically finding that the disputed bank accounts and CDs "are not property of the Estate" and that Myers, as executor, "has no standing to assert a claim relative to Johnny's actions in modifying the disputed bank accounts and certificates of deposit." The court concluded that Johnny did not breach his fiduciary duty, commit conversion, or become unjustly enriched by his actions as POA. The court approved the amended FSA. Finally, the court found that Myers had failed to prove any cause of action against the Bank. The court incorporated by reference its letter opinion. Myers appealed the circuit court's order.

We review probate matters de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous. *In re Est. of Kemp*, 2014 Ark. App. 160, at 5, 433 S.W.3d 911, 914. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.*, 433 S.W.3d at 914. We must also defer to the superior position of the circuit court sitting in a probate matter to weigh the credibility of the witnesses. *Id.*, 433 S.W.3d at 914.

Because Myers's first two points are related and dispositive of this appeal, we will address them together. Myers contends that the circuit court erred in concluding that the checking and savings accounts and the CDs are not and were never intended to be property of the estate and, thus, that he has no standing to contest Johnny's actions as POA for Ima Jean.[2] We agree with the circuit court's thorough analysis of these issues.

None of the provisions in Ima Jean's will address financial accounts or CDs. These accounts are "deposit accounts." Ark. Code Ann. § 23-45-102(17) (Supp. 2023). All the checking and savings accounts and the CDs, whether when initially set up by Ima Jean or when modified by Johnny, contained POD designations. A designation of POD means just that: the property is payable on death and passes straight to the beneficiary designated. *See*

---

[2]Myers argues on appeal that the transfer-on-death accounts (TODs) are governed by the Uniform TOD Security Registration Act and that the TOD designations in this case were fraudulent. Myers did not argue this in the circuit court and thus did not preserve it for our review. We note, however, that this Act applies only to securities and not to the checking and savings accounts or the CDs at issue in this case. *See* Ark. Code Ann. § 28-14-112 (Repl. 2012).

8

Ark. Code Ann. § 23-47-204(e) (Supp. 2023). It does not become part of the account holder's estate. *Id.* In addition, the designation of ownership interest contained in account documents is "conclusive evidence" in any action or proceeding involving the deposit account of the intention of all depositors to vest title to the deposit account in the manner specified in the account documents. Ark. Code Ann. § 23-47-204(b)(3). The circuit court found that the POD beneficiary designations in all of Ima Jean's accounts and CDs constituted conclusive evidence as to her intentions for them and that she did not intend for these accounts and CDs to be part of her estate. We are not left with the firm conviction that a mistake has been committed and hold the court did not clearly err.

Because the disputed accounts are not property of the estate, the circuit court found that Myers, as executor of the estate, had no interest in them and no standing to contest Johnny's actions in relation to them. Myers claims on appeal that he has standing to contest Johnny's actions as POA because Myers is a fiduciary acting on behalf of a principal, citing Arkansas Code Annotated section 28-68-116(a)(2) (Repl. 2012).[3] He argues that under section 28-69-301 (Repl. 2012), a fiduciary includes the executor of an estate.

---

[3](a) The following persons may petition a court to construe a power of attorney or review the agent's conduct, and grant appropriate relief:

(1) the principal or the agent;
(2) a guardian, conservator, or other fiduciary acting for the principal;
(3) a person authorized to make health-care decisions for the principal;
(4) the principal's spouse, parent, or descendant;
(5) an individual who would qualify as a presumptive heir of the principal;

First, Myers did not mention this statute to the circuit court. Second, the definition of fiduciary in section 28-69-301 specifically provides that it applies to the use of fiduciary "in this subchapter." Section 28-68-116 is not in the same chapter of the code. Further, although an executor of an estate occupies a fiduciary position in all transactions affecting the estate, Myers cites no authority that this gives him standing to challenge actions regarding property that is not part of the estate or that it makes him a fiduciary for Ima Jean. *See Robinson v. Winston*, 64 Ark. App. 170, 176, 984 S.W.2d 38, 41 (1998); *Price v. Price*, 253 Ark. 1124, 1137, 491 S.W.2d 793, 801 (1973) (personal representative occupies a fiduciary relationship toward the heirs, and it is his duty to act toward them with the utmost good faith). Section 28-68-116(a)(2) does not give an executor, solely in his or her role as an executor, the authority to challenge a power of attorney of the decedent. Although subdivisions (a)(5) and (6) give an individual who would qualify as a presumptive heir of the principal or a person named as a beneficiary to receive any property, benefit, or contractual right on the principal's death standing to have the court review the actions of an agent under a power of attorney in certain situations, Myers is neither a presumptive heir nor a

---

(6) a person named as a beneficiary to receive any property, benefit, or contractual right on the principal's death or as a beneficiary of a trust created by or for the principal that has a financial interest in the principal's estate;
(7) a governmental agency having regulatory authority to protect the welfare of the principal;
(8) the principal's caregiver or another person that demonstrates sufficient interest in the principal's welfare; and
(9) a person asked to accept the power of attorney.

10

beneficiary. *See Liberty Bank of Ark. v. Byrd*, 2016 Ark. App. 86, at 6, 482 S.W.3d 746, 750 (holding that executor had standing as presumptive heir and beneficiary, not as fiduciary or executor, to review the conduct of an agent under a power of attorney for the decedent). A party has no standing to raise an issue regarding property in which he has no interest. *Nash v. Estate of Swaffar*, 336 Ark. 235, 242, 983 S.W.2d 942, 945 (1999). Therefore, we affirm the circuit court's determination that Myers did not have standing to challenge actions regarding property that was not part of the estate.

Because the remaining points on appeal—that Johnny breached his fiduciary duty, committed conversion, and unjustly enriched himself; that the court erred in approving the amended FSA; and that the court erred in denying his injunction and his claim for money damages against the Bank—all concern accounts and CDs in which the estate has no interest and regarding which Myers has no standing, we do not address them.

Affirmed.

MURPHY and BROWN, JJ., agree.

*David Hodge*, for appellant.

*Womack Phelps Puryear Mayfield & McNeil, P.A.*, by: *Mark Mayfield*, for separate appellee Johnny Lindsey.

*Edward W. Boyce*, for separate appellee Merchants & Planters Bank.